## Roesch Enamel Range Company et al., Defendants in Error, v. Edward Carbine, Plaintiff in Error.

1. INJUNCTIONS—*necessity that order be plain.* An injunction should be so worded that the party enjoined may know from a reading of the order what he is restrained from doing.

2. TRADE UNIONS—*validity of picketing.* All picketing is not unlawful.

3. CONTEMPT—*violation of injunction against picketing.* Only persons who resorted to, or who aided, abetted or assisted in the commission of acts of violence should be held in contempt of court for violating an injunction against unlawful picketing, where an ordinary layman might reasonably understand from the terms of the injunction that he would not be violating it unless he committed acts of violence.

4. CONTEMPT—*assault as violation of injunction against picketing.* A person who, after following in an automobile a workman driving others home, strikes the workman, and others accompanying the striker in their automobiles, who aid and abet him by their presence, were guilty of contempt of court in violating an injunction against unlawful picketing, where an ordinary layman might reasonably understand from the terms of the injunction that he would be violating it by committing acts of violence.

5. CONTEMPT—*assault by group as violation of injunction against picketing.* Where four persons accost a workman on a street and one of them strikes him, although it is not shown which one struck the blow, all were guilty of contempt of court in violating an injunction against unlawful picketing, where an ordinary layman might reasonably understand from the terms of the injunction that he would be violating it by committing acts of violence.

Error by defendant to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1927. Judgments as to part of defendants affirmed and as to part reversed. Opinion filed January 20, 1928.

JAMES O. MILLER, for plaintiff in error.

FARMER & KLINGEL, for defendants in error.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Plaintiff in error and 27 others were found guilty of contempt of court for the violation of an injunction previously procured against them by defendants in error. The cases were consolidated and heard on the same briefs and arguments and this opinion will apply to each case.

Defendants in error procured a temporary injunction against these parties restraining them from *unlawfully* picketing the complainants' premises and from *unlawfully* doing various specified acts. An injunction should be so worded that the party enjoined may know from a reading of the order what he is restrained from doing. Congress adopted the Clayton Act on October 15, 1914, and our legislature adopted an act relating to disputes concerning terms and conditions of employment which became effective July 1, 1925, Cahill's St. ch. 22, ¶ 58. Each of these acts expressly prohibited the issuance of a restraining order or injunction in certain enumerated cases. Some of the things therein referred to would ordinarily be regarded as falling within the term "picketing." The acts indicate that congress and the legislature were of the opinion that there may be such a thing as peaceful and lawful picketing. In *American Steel Foundries v. Tri-City Central Trades Council,* 257 U. S. 184, the court used language which seems to recognize the fact that all picketing is not unlawful. The court said: "Each case must turn on its own circumstances. It is a case for the flexible remedial power of a court of equity which may try one mode of restraint, and, if it fails or proves to be too drastic, may change it. We think that the strikers and their sympathizers en-

gaged in the economic struggle should be limited to one representative for each point of ingress or egress in the plant or place of business, and that all others be enjoined from congregating or loitering at the plant or in the neighboring streets by which access is had to the plant; that such representatives should have the right of observation, communication and persuasion, but with special admonition that their communication, arguments and appeals shall not be abusive, libelous or threatening, and that they shall not approach individuals together but singly, and shall not in their single efforts at communication or persuasion, obstruct an unwilling listener by importunate following or dogging his steps. This is not laid down as a rigid rule, but only as one which should apply to this case under the circumstances disclosed by the evidence, and which may be varied in other cases. * * * The purpose should be to prevent the inevitable intimidation of the presence of groups of pickets, but to allow missionaries.''

In view of the statutes aforesaid and the decision of the Supreme Court of the United States, we are of the opinion that the ordinary layman might reasonably understand that as he was enjoined from unlawful picketing he would not be acting in violation of the terms of the injunction unless he committed acts of violence. From the language of the injunction he was to determine, at his peril, what acts would be unlawful. We are of the opinion, in view of the wording of the injunction, that none of the plaintiffs in error should be held in contempt of court other than those who resorted to, or who aided, abetted or assisted in the commission of acts of violence.

Walter Schaffer and some others were living at Mascoutah and were working for defendants in error at the time of and during the strike. Schaffer had a car and was taking some of his fellow-workmen home at the close of their day's work. James Paxson, Paul

Seibert, William Keim, Lester Mahan, Bryan Becker, Morris Rade and Edward Grandcolas were in other cars and followed Schaffer's car for some distance beyond the city limits of Belleville and finally turned in front of the Schaffer car and stopped it. Schaffer wanted to drive on but was not permitted. Paxson got out of the car in which he was riding, jumped on the running-board of Schaffer's car and then and there assaulted Schaffer. While Paxson was the only one who struck Schaffer, yet the others above named were then and there present aiding and abetting and made no effort to prevent the assault. We are satisfied that the wording of the injunction should not afford these men an excuse for their conduct on that occasion and the judgments in their cases will be affirmed.

Roy McGaw and Lawrence Yost were employed in the plant of Roesch Enamel Company and had left the plant at the close of their day's work. They were accosted on the street by Charles Miller, Paul Seibert, George Hemmer and Tony Hemmer. On that occasion one of the four persons last mentioned struck McGaw in the eye. Tony Hemmer was the only one of the plaintiffs in error who testified to that occurrence. He testified that some one of his crowd hit McGaw but he didn't know which one; that he would have done it himself if the other party had not. He says that McGaw called them a vile name and that was the reason he was struck. McGaw says that at the time he was struck he had not said anything to them. We would not be warranted in reversing the judgments against Charles Miller, Paul Seibert, George Hemmer and Tony Hemmer. It is evident that one of them struck the blow and that the others were present aiding and abetting and that the wording of the injunction would not excuse such conduct.

The court found that after the issuance of the injunction, bricks and stones were thrown through the windows of three or four of the homes of employees of

defendants in error; that these occurrences were at night and that the persons who committed the acts were unknown. The petition for citation did not aver, nor did the court find, that all of these plaintiffs in error were engaged in a conspiracy. The wording of the decree is not such as to indicate that the court intended to hold any of these plaintiffs in error responsible for the throwing of bricks and stones as aforesaid.

Our conclusion is that the judgments against James Paxson, Paul Seibert, William Keim, Lester Mahan, Bryan Becker, Morris Rade, Edward Grandcolas, Charles Miller, George Hemmer and Tony Hemmer should be and they are hereby affirmed.

We find no evidence in the record tending to show that any of the other plaintiffs in error were guilty of any violence or in aiding or abetting the commission of any act of violence.

The judgments against Edward Carbine, Frank Riesenberger, Henry Dawson, Frances Schultz, Eugene Finklein, Martha Schultz, Lucinda Keim, Lester Groom, Eugene Schmidt, Edward Hottenroth, Peter Diehl, William Heeley, Esther Keim, George Klincar, Irene McEwen, Paul Noll, Henry Stiffler and Pierre Klotz are reversed.

*Judgments as to part of defendants affirmed and as to part reversed.*