(No. 21712.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* THE CHICAGO MOTOR CLUB, Respondent.

*Opinion filed October 14, 1935—Rehearing denied Dec. 5, 1935.*

CHARLES LEVITON, and CHARLES P. MEGAN, for relator.

MILLER, GORHAM, WALES & ADAMS, and ODE L. RANKIN, (SIDNEY S. GORHAM, and HERBERT C. DEYOUNG, of counsel,) for respondent.

Mr. JUSTICE ORR delivered the opinion of the court:

An original proceeding was brought in this court by the Chicago Bar Association, as relator, against the Chicago Motor Club, as respondent, to restrain it from engaging in the alleged practice of law and to compel it to show cause why it should not be punished for contempt of court. Respondent answered, and the cause was referred to Sidney S. Pollack, master in chancery of the superior court of Cook county, as special commissioner to hear evidence and report his conclusions of fact and law.

The information alleges that respondent is a corporation, and is now, and for many years has been, engaged in the practice of law in Cook county and adjoining counties in Illinois; that it employs a number of members of the bar on a weekly, monthly or yearly salary by whom such alleged practice is carried on, and that the scope and activities complained of are shown by certain documents issued by respondent, which are attached to the information as exhibits. Respondent in its answer denies that it has been, and is, practicing law; shows that it is a corporation not for pecuniary profit, organized for the purposes of promoting things of benefit to motorists, sponsoring legislation which it deems favorable to the interests of motorists and opposing that which appears detrimental to their welfare, taking the lead in securing improved highways and safety measures and protecting its members against unjust laws and abuses. The answer alleges that the services complained of are rendered on behalf of motorists who have a community of interests in the club's purposes, which are, in effect, the purposes and objects of each individual motorist, and that such objects may be attained only through a voluntary organization of the character of respondent and the services of lawyers employed by it. The answer also maintains that the results achieved by respondent and its legal department benefit not only its members but all motorists.

Relator introduced no evidence. Respondent, in support of its answer, introduced evidence before the commissioner showing the nature and extent of its activities and those of its legal department; that its legal department had been approved by the Chicago Bar Association and excepted from the operation of its canons of ethics adopted in 1928; that in 1931 relator amended its code of ethics and withdrew its sanction of respondent's legal department, although the character and extent of its activities were the same as in 1928.

The ultimate findings of the commissioner are that the "respondent has rendered valuable services to its members and to the communities in which it operates, such services consisting principally of correcting traffic abuses and eliminating various speed traps. It admits, however, that it is performing legal services for thousands of its members; it admits soliciting memberships for such purpose. It furnishes the services of a lawyer to any of its members who may request such services, although at the present time such services are limited to legal proceedings having to do with violations of the traffic laws and ordinances. A member requesting legal services is not permitted to choose his own attorney but his case is assigned by respondent to one of the members of its legal staff, as hereinbefore set forth, and this constitutes practice of law. The commissioner therefore concludes that the respondent has been, and is, engaged in the practice of law."

In the exceptions filed here by respondent to the commissioner's report, disagreement is had with all his findings excepting the first sentence above quoted, and respondent also denies the correctness of the commissioner's finding that it has been, and is, engaged in the practice of law.

The scope and character of the legal activities engaged in by respondent are best shown by the following excerpts from various advertisements and exhibits attached to the information:

### "Legal Service.

"Members are always free to consult the legal department in any of their troubles concerning the use or ownership of their automobiles. In Cook county the attorneys employed by the club devote their entire time to serving members. In the territory outside of Cook county reliable firms of attorneys are retained to represent members. Should you be arrested for an alleged violation of the Motor Vehicle law, you may call the legal department, and one of our attorneys will conduct your defense in court. The handling of property damage cases is another service rendered by the legal department."

Attached to the information, and marked "Exhibit 5," are photostatic copies of certain pages of a pamphlet entitled, "How 70,000 Motorists Cut Motoring Expense," in which the following statements appear:

"In Cook county the attorneys employed by the club devote their entire time to serving members. In the territory of the club outside of Cook county firms of attorneys are retained to represent members.

"Should you be arrested anywhere in the territory of the club for alleged violation of a city ordinance, or of the Motor Vehicle law, call the club if you are in Cook county; if you are in any other part of the territory call the firm of attorneys that represent members in that particular county. You will find a list of these attorneys published in every issue of *Motor News*, the monthly magazine of the club. In addition to the actual handling of cases in court, involving violations of the Motor Vehicle act, the legal department spends much time in giving advice to members.

"The handling of property damage cases is another service that is rendered by the legal department. If your car is damaged or if someone sues you for property damage, call on the legal department. Attorneys for the club will try to make an adjustment for you, and if necessary will handle your case in court.

"Speed trap operators, fake motoring organizations, swindling concerns selling to the motorists, and crooked officials, all find the legal department an able and determined foe. Ready at all times to coöperate with honest officials, the legal department, nevertheless, refuses to condone corruption on the part of any arresting agency.

"The relations of the legal department with a majority of the magistrates have been extremely friendly and the honest officials are just as anxious as the legal department that the spotlight be thrown on the activities of grafters who prey upon motorists under the cloak of law and authority. This friendly coöperation has made for better motoring conditions for the entire driving public."

Exhibit 6 is a copy of page 17 of a pamphlet entitled, "Membership Committee Bulletin." This page contains a photograph of a section of the offices of the club and the following printed matter: "Eighty-one attorneys at your service to represent you in automobile damage or traffic violation cases. If your car is damaged or someone sues you, call the legal department. If necessary, club attorneys will handle the case in court, should you be arrested for alleged violation of vehicle laws or city ordinances, call a club attorney."

The evidence before the commissioner showed that all of the attorneys employed by respondent were duly licensed to practice in this State, and no unethical practices were charged against any of them. Respondent has a membership of approximately 60,000 automobile owners residing in Illinois and northern Indiana and for many years has been an active influence in the promotion of highway safety. The evidence further shows that it originated and has financed the school-boy patrol within the territory in which it functions and is continuing to do so; that it has posted a great number of traffic and warning signs; that it furnishes touring information to its members and information regarding traffic and licensing laws and ordinances; that

it has represented the interests of the motoring public with respect to legislation for good roads, enlightened motor vehicle laws, and the prevention of excessive taxation and other impositions upon motorists; that one of the most important direct services rendered by respondent to its members is represented by the mechanical emergency road service; that in the services rendered by various departments of respondent other than by lawyers employed, the services of whom are available only to its members, motorists throughout the State derive substantial, though indirect, benefits.

The evidence shows and the commissioner found that during the year 1931 the lawyers employed by respondent handled a total of 8640 separate matters in which damages to property caused by the operation of motor vehicles were involved; that the average amount per claim was $12.39; that in all civil suits handled by lawyers employed by respondent the court costs are advanced by the members, and in no case did respondent, nor any lawyer or other person employed by it, make advancements for members or collect any fees or retain under the guise of commissions or otherwise, a single penny of the amount collected in cases where the plaintiff is represented; that the entire expense of such legal service is borne by respondent and paid out of the dues received from its members; that each additional case handled by the lawyers employed by respondent involved an added expense to it; that neither respondent nor any individual in any way connected with it derives any direct profit from the performance of the duties of lawyers employed by respondent, except that said lawyers, as all employees of respondent, are paid upon a fixed salary basis and do not engage in general practice; that in the territory outside of Cook county lawyers are employed and paid by respondent, and neither respondent nor any of its local lawyers outside of Cook county receive any money directly from the member for services rendered; that all moneys

received by respondent from every source are expended for the benefit of its members; that the lawyers so employed do not in any instance handle claims for damages for personal injuries nor defend such claims on behalf of members of respondent, but their activities are confined strictly to claims by or against members of respondent involving damage to property or violations of the motor vehicle laws.

By way of exception to the findings of the commissioner, respondent claims there is no admission in the record that it solicited memberships for the purpose of performing legal services; that the corporation itself performed no legal services, but such as were in fact performed were by lawyers engaged by respondent for its members pursuant to authority received by it from them; that such legal services were paid for out of dues collected by respondent from its members as their representative and agent. It is further contended that respondent is not engaged in the practice of law within its ordinarily accepted sense, but that its legal functions are only a part of its many-sided activities as a service organization whose members have a common interest.

However beneficial its many other purposes and services seem to be to its members and to the public generally, we cannot condone the advertisements and solicitations of memberships by respondent and its admission that it was only acting as agent in rendering legal services for its members without abandoning the rules laid down in several recent cases governing such practices. While the case of *People* v. *Peoples Stock Yards Bank,* 344 Ill. 462, is distinguishable from the present case in many respects, yet the fundamental principle was there expressed that "a corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it." When the Chicago Motor Club offered legal services to its members with the statement, "should you be arrested for an alleged violation of the Motor Vehicle law, you may call the legal

department, and one of our attorneys will conduct your defense in court," it was engaging in the business of hiring lawyers to practice law for its members. This we have repeatedly condemned in Illinois. (*People* v. *Peoples Stock Yards Bank, supra; People* v. *Motorists Ass'n,* 354 Ill. 595; *People* v. *Real Estate Tax-payers,* 354 id. 102.) Other jurisdictions have reached the same or similar conclusions in recent cases. (*Goodman* v. *Motorists Alliance,* 29 Ohio N. P. R. 31; *In re Morse,* 98 Vt. 85, 126 Atl. 550; *In re Opinion of the Justices,* 194 N. E. (Mass.) 313; *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n,* 179 Atl. (R. I.) 139, decided May 9, 1935.) The fact that respondent was a corporation organized not for profit does not vary the rule. *People* v. *Real Estate Tax-payers, supra.*

Legal services cannot be capitalized for the profit of laymen, corporate or otherwise, directly or indirectly, in this State. In practically every jurisdiction where the issue has been raised it has been held that the public welfare demands that legal services should not be commercialized, and that no corporation, association or partnership of laymen can contract with its members to supply them with legal services, as if that service were a commodity which could be advertised, bought, sold and delivered. The present case offers no exception to the rule, notwithstanding the other beneficial services rendered by respondent to its members and to the public generally.

The report of the commissioner is confirmed, and respondent, a corporation, is found guilty of unauthorized practice of law, is therefore in contempt of this court, and is ordered to pay to the clerk of this court a fine of $1000 and costs of suit.

*Respondent adjudged guilty of contempt.*

JONES and HERRICK, JJ., dissenting.