(No. 23052.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* ALBERT GOODMAN, Respondent.

*Opinion filed February 18, 1937—Rehearing denied June 2, 1937.*

Orr, Jones, and Shaw, JJ., dissenting.

Charles P. Megan, and Charles Leviton, (Werner W. Schroeder, David J. A. Hayes, and L. Duncan Lloyd, of counsel,) for relator.

Leonard J. Grossman, for respondent.

Mr. Chief Justice Herrick delivered the opinion of the court:

On leave granted, the relator, the Chicago Bar Association, filed in this court an information detailing certain acts on the part of the respondent which the relator alleges constitute the practice of law and for which the respondent should be held in contempt of this court. The respondent has filed his motion to strike the information, and also a plea of estoppel. The motion to strike is in the nature of a demurrer. It challenges (1) the sufficiency of the information as a pleading, (2) the jurisdiction of this court and (3) that the activities charged do not constitute the practice of law.

The information avers that Goodman is not a lawyer. He has offices in Chicago in and from which he· engages in the business of handling and adjusting workmen's compensation claims. He obtains business by a widespread plan of solicitation which includes advertisement in the telephone directory, cards, circulars, letters and radio announcements. He carries on his business under various titles, including "The Injured Workingmen's Adjustment Bureau," "Injured Workmen's Bureau," "The Public Bureau of Investigation and Adjustments," and "Workingmen's Adjustment Bureau."

The information further charges that respondent has adjusted over 8200 workmen's claims and, by means thereof, has collected $4,000,000 on behalf of injured workmen; that he is at present handling compensation claims at the rate of over 750 annually, which involve over $400,000. All claims are taken by respondent on a contingent fee basis, usually twenty per cent of the amount of recovery. After respondent obtains a contract of employment from the injured workman, he negotiates for settlement with the employer or insurance carrier. If a settlement is effected, he prepares and files a petition with the Industrial Commission and obtains an order approving the settlement, including a lump-sum to be paid, if that is part of the agreement. In case no settlement is reached, he prepares and files a claim for adjustment and brings it to hearing before an arbitrator of the commission. On such hearing he presents the evidence and endeavors to obtain a settlement or an award. In the event an award is allowed and an appeal is taken to the Industrial Commission as a whole, he follows the matter. In the vast majority of the cases all the foregoing services are performed by the respondent, Goodman, or his lay employees. Only when an especially difficult question of law or fact arises, or when appeals are taken to the circuit court, does he employ a member of the bar. The percentage of respondent's cases represented by

attorneys is very small. When he discovers that the claim of his client is enforcible at common law, and not under the Workmen's Compensation act, he negotiates for a settlement thereof. If a settlement is not reached, he causes suit to be filed at law. He employs an attorney for that purpose.

The respondent, in support of his charge that the information is insufficient, urges that it is not sufficiently specific in stating the time and place when, where and how the claims were disposed of, persons involved therein, and where such causes were tried, if there was a trial, which it is claimed constitute the practice of law. The information stated the offense charged so plainly and specifically that the nature thereof, and the acts alleged to constitute the offense, could be understood readily by the respondent. The detailing of the particulars would have made the information prolix. Moreover, by reason of the nature of the offense alleged, the activities of the defendant, averred to constitute the unlawful practice of law by him, rested within his knowledge, so that a general statement of the charge was sufficient. It was unnecessary to plead the evidence. The information was sufficiently specific. *People* v. *Colegrove,* 354 Ill. 164; *Lincoln Park Coal Co.* v. *Wabash Railway Co.* 338 id. 82; *State of Illinois* v. *Illinois Central Railroad Co.* 246 id. 188 (236, 7.)

The power to regulate and define the practice of law is a prerogative of the judicial department as one of the three divisions of the government created by article 3 of our constitution. The legislative department may pass acts declaring the unauthorized practice of law illegal and punishable. Such statutes are merely in aid of, and do not supersede or detract from, the power of the judicial department to control the practice of law. (*In re Day,* 181 Ill. 73; *R. I. Bar Ass'n* v. *Automobile Service Ass'n,* 179 Atl. 139.) The power is inherent in this court to prescribe regulations for the study of law and the admission of ap-

plicants for the practice of that profession. (*People* v. *Peoples Stock Yards State Bank,* 344 Ill. 462; *In re Day, supra.*) It follows, as an incident to such power, that this court has jurisdiction to discipline or disbar, for cause, attorneys licensed by it. It would be an anomalous situation if a layman actively engaged in the practice of law, in defiance of the requirements necessary therefor announced by this court, could stay the hand of the court from suppressing his illegal acts. The practice of law, both in courts and out of courts, by one not licensed, is an illegal usurpation of the privilege of an attorney and is a contempt of this court. *People* v. *Chicago Motor Club,* 362 Ill. 50; *People* v. *Motorists Ass'n,* 354 id. 595; *People* v. *Real Estate Tax-Payers,* 354 id. 102; *People* v. *Peoples Stock Yards State Bank, supra.*

In modern times the affairs of the people requiring the services of a lawyer have become more intricate and complex, demanding a corresponding increase in the standards of the profession through preliminary education and a lengthened and more diversified course of study by those who would engage in the practice. Administrative law, although of comparatively recent growth, is recognized today as an important branch of the law. Classes for the study thereof are now taught in many of our leading law schools. Relatively speaking, not many years ago that part of a legal education was unknown to the curriculums of law colleges. In addition to the rigid educational requirements, the applicant must possess a good moral character. These prerequisites are not for the purpose of creating a monopoly in the legal profession nor for its protection, but are for the better security of the people against incompetency and dishonesty. (*People* v. *Alfani,* 227 N. Y. 334, 125 N. E. 671; *In re Opinion of Justices* (Mass.) 194 N. E. 313.) The right to practice law is in the nature of a franchise, but the holder thereof may not incorporate himself and assign his franchise to such corporation and

pass the right on to others. The privilege to practice law is personal to the holder of the right.

In *People* v. *Peoples Stock Yards State Bank, supra,* at page 475, the court stated that the definition of the practice of law therein set forth was substantially correct. This court and other courts have always been reluctant to adopt an all inclusive definition of the term "practice of law." It has been held that "persons acting professionally in legal formalities, negotiations or proceedings by warrant or authority of their clients" are engaged in the practice of law. (*In re Duncan,* 83 S. C. 186, 65 S. E. 210, 18 Ann. Cas. 657.) Likewise it has been decided that, (*a*) giving an opinion as to the right to maintain an action against another, (*b*) furnishing legal services, or giving advice to others on questions of law and (*c*) soliciting, settling or adjusting personal injury claims, constitute the practice of law. (*Fitchette* v. *Taylor,* 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356.) The procuring of an agreement enabling an unlicensed person to control the negotiations and the litigation that might follow on the failure of the negotiations, and the hiring of licensed attorneys to conduct litigation for others, for the financial profit of the hirer, has been defined as the practice of law. (*Smallberg* v. *State Bar of California,* 212 Cal. 52, 297 Pac. 532; *Howe* v. *State Bank of California,* id. 222, 298 Pac. 25; *In re Otterness,* 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319; *Hightower* v. *Detroit Edison Co.* 262 Mich. 1, 247 N. W. 97.) For cases holding to the same effect, in principle, see *In re Co-Operative Law Co.* 198 N. Y. 479, 92 N. E. 15; *Berk* v. *State,* 225 Ala. 324, 142 So. 832, 84 A. L. R. 740; *Creditors National Clearing House* v. *Bannwart,* 227 Mass. 579, 116 N. E. 886.

One who, for a fee, contingent or otherwise, advises others as to their legal rights, the method to be pursued, the forum to be selected and the practice to be followed for the enforcement of such rights, is engaged in the prac-

tice of law. *In re Shoe Manf. Protective Ass'n,* (Mass.) 3 N. E. (2d) 746; *In re Maclub of America,* 3 N. E. (2d) 272.

It is urged that the practice by the respondent before the Industrial Commission is before an administrative body, and that the respondent, therefore, is not practicing law because he is not before a court. That precise. question is one of first impression in this court. It is elementary that a great portion of the present day practice of law is conducted outside the court room. The respondent urges that because the legislative act relating to the Industrial Commission grants to that body the right to promulgate rules governing the procedure before it, and the commission has adopted a rule permitting a party to appear before it by his attorney or "agent," that he, as agent of the claimant, may lawfully appear before the commission as the representative of the client and try his claim there. Even though the Industrial Commission is merely an administrative body, yet, if what the respondent did for a fee, in the presentation of and hearing of a petitioner's claim before that body, amounted to the practice of law, a rule of the commission purporting to grant him that privilege is of no avail to him. The General Assembly has no authority to grant a layman the right to practice law. (*In re Day, supra.*) It follows that any rule adopted by the commission, purporting to bestow such privilege upon one not a duly licensed attorney at law, is void. Nor can the General Assembly lawfully declare not to be the practice of law, those activities the performance of which the judicial department may determine is the practice of law.

Respondent, in support of his position that his acts before the Industrial Commission do not constitute the practice of law, cites *Goodman* v. *Beall,* 130 Ohio St. 427, 200 N. E. 470. An examination of that case, in conjunction with the Ohio statutes, shows a marked distinction between the Ohio and Illinois statutes pertaining to the first steps

for the recovery of compensation for injuries to workmen. The constitution of the State of Ohio provides that a State insurance fund may be created by means of compulsory contributions by employers, the fund thus established to be devoted to the payment of awards to those workmen injured and the dependents of those killed. (Section 35 of article 2 of the Ohio Constitution.) The General Assembly of Ohio has enacted a statute by which a State insurance fund has been set up. All employers must contribute to the fund. Ohio General Code, secs. 1465-37 to 1465-112.

In Ohio the initial procedure for the allowance of compensation is quite simple. The workman makes his claim upon a blank furnished him by the commission. Upon the filing of the claim the employer makes a report of the injury, accompanied by the attending physician's report. If the commission is satisfied that the claim is just, an award is allowed payable out of the State insurance fund. If not satisfied on the showing made, it may make an independent investigation and for that purpose may appoint a referee who may take evidence. The referee makes his report with his recommendations to the commission. If the commission grants the award, its decision is final. No appeal by the fund is provided. The employer is granted no appeal, because his liability is to pay a fixed amount into the State insurance fund, and hence he has no financial interest in the ultimate disposal of the claim. Up to this point it will be observed that the proceeding is not an adversary one. In the *Beall case, supra,* the Ohio court held that, in non-adversary proceedings, one who represents the workman in the prosecution of his claim is not engaged in the practice of law. The Ohio act further provides that if the claim be disallowed the workman may file a petition for rehearing. The proceeding then becomes an adversary one. On the hearing upon that petition the Attorney General represents the State fund. Evidence is taken upon the issues made by the petition for rehearing "as in the trial of civil

actions." The commission decides the case upon the evidence taken on the rehearing petition. If the award is again refused, an appeal is provided to the court of common pleas having jurisdiction. The commission files with that court the transcript of the record made on the rehearing proceeding. The case is there heard on the evidence taken on the rehearing, and no other evidence. A jury trial is permitted. The Supreme Court of Ohio in the *Beall case, supra,* said, in discussing the practice under the petition for rehearing (p. 473) : "It presents exactly the kind of work for which his [an attorney] training and experience particularly fit him. Such record constitutes the entire evidence upon which the merit or demerits of a claim can be determined by a court and jury. If a record be poorly and inexpertly prepared the rights of interested parties may be seriously prejudiced. Its formation unquestionably comes within any well considered and complete definition of the practice of law."

It is apparent that the proceeding in Ohio, on the petition for rehearing, corresponds with the prescribed practice in this State before the commission for the allowance of workmen's claims, except that when the record is brought into the circuit court, there is no jury trial. Aside from the pleadings, the practice before the commission, the burden of proof and the competency of the evidence are the same as in actions at law for recovery of damages for personal injuries. *Sanitary District of Chicago* v. *Industrial Com.* 343 Ill. 236; *Western Shade Cloth Co.* v. *Industrial Com.* 325 id. 570; *Chicago Daily News Co.* v. *Industrial Com.* 306 id. 212.

Under the issues made, the respondent, in the business carried on by him, on occasion must decide whether the facts present a given cause of action within the Workmen's Compensation law or the Federal Employer's liability act. To make such decision is often a difficult task and competent lawyers may differ as to the forum in which the

redress may properly be sought. Profound lawyers are not to be criticized because they are sometimes puzzled in determining what constitutes interstate transportation as distinguished from intrastate. (*Chicago and Illinois Midland Railway Co.* v. *Industrial Com.* 362 Ill. 257; *Day* v. *Chicago and Northwestern Railway Co.* 354 id. 469.) The Workmen's Compensation act frequently involves many delicate questions of law and fact. (*Hays* v. *Illinois Terminal Transportation Co.* 363 Ill. 397; *Severin* v. *Industrial Com.* id. 217; *Forest Preserve District* v. *Industrial Com.* 357 id. 389; *LaSalle County Carbon Coal Co.* v. *Industrial Com.* 356 id. 421; *Kennedy-Van Saun Corp.* v. *Industrial Com.* 355 id. 519; *Harding Co.* v. *Industrial Com.* 355 id. 139; *International Harvester Co.* v. *Industrial Com.* 354 id. 151; *Board of Education* v. *Industrial Com.* 346 id. 505; *Stevens* v. *Industrial Com.* id. 495; *Jacobi* v. *Industrial Com.* 342 id. 210.) So also, in his practice, respondent must determine whether the injured employee has a common law action to recover damages for his injuries. (*Wintersteen* v. *National Cooperage Co.* 361 Ill. 95.) A situation may arise where it may be necessary for him to determine whether the statute creates two causes of action, one in favor of the employee for injuries not causing his death, and the other in favor of the dependents, where death subsequently ensues as the result of the same injuries. (*American Steel Foundries* v. *Industrial Com.* 361 Ill. 582.) Although the Industrial Commission is an administrative agency, yet its findings on certain matters are conclusive and may not be re-litigated. (*Lewin Metals Corp.* v. *Industrial Com.* 360 Ill. 371.) Numerous other cases might well be cited bearing upon the complicated questions and perplexing problems which are the product of the Workmen's Compensation act of this State. An examination of the above cases involving questions springing from the administration of the Workmen's Compensation act will readily convince the reader that the field

covered by that statute is comprehensive, and that one who practices in that sphere must understand its legal ramifications. He should, from a lawyer's standpoint, be able understandingly to weigh evidence and co-ordinate the testimony and its application to the statute. He must have a trained legal mind so that he may grasp intelligently the substantive provisions of (1) the Workmen's Compensation act, (2) the Federal Employer's Liability act and (3) the common law, as related to liability for damages for traumatic injuries. Obviously, the decision of these issues, and action thereon, require more than a layman's knowledge of the law. It is a service that exacts a high degree of legal skill by one who would serve his clients efficiently. That at least one of the respondent's clients has come without the realm of the practice before the Industrial Commission, is apparent from some of his advertising matter. In the list there given of numerous clients for whom recovery has been had, and the amounts thereof, is one where the amount paid was $17,500. The Workmen's Compensation act of this State does not permit an award of such large size.

In those instances where the respondent has employed an attorney to represent him in a cause which has found its way from the Industrial Commission to a court of record, the relation of attorney and client does not exist between the attorney and his ostensible client. The faithful observance of the fiduciary and confidential relationship between attorney and client is one of the greatest traditions of the legal profession. In Goodman's business that relationship is absent as to the litigant whom the attorney employed by Goodman purportedly represents. The respondent is the attorney's real client and paymaster, and the one to whom the attorney owes allegiance. In principle there is no distinction as to the phase of respondent's undertaking where he hires and pays the attorney, and that held to constitute the practice of law in *People* v. *Real Estate Tax-*

*Payers, supra,* and *People* v. *Motorists Ass'n, supra.* It is immaterial whether the acts which constitute the practice of law are done in an office, before a court or before an administrative body. The character of the act done, and not the place where it is committed, is the factor which is decisive of whether it constitutes the practice of law. In so far as the opinion in the *Beall case, supra,* may appear to conflict with our views as here expressed, we decline to follow that case. We hold that the court has jurisdiction of the respondent and that the institution of proceedings before the Industrial Commission, and his trial of those causes before the arbitrator and the commission, constituted the practice of law.

There remains the issue made on the plea of estoppel. An information was filed in the municipal court of Chicago charging that on January 21, 1927, in the county of Cook, the respondent here, not being regularly licensed to practice law, held himself out as an attorney at law and then and there represented himself verbally, and in writing, directly and indirectly, as being authorized to practice law in all courts of the State, contrary to the statute. Upon trial by the court he was found guilty and sentenced to pay a fine of $500 and costs, and committed to the county jail for three months. The prosecution was brought under "An act to prevent and punish frauds in the practice of law." (State Bar Stat. 1935, chap. 38, par. 281, p. 1187.) That statute consists of two sections. Section 1 makes it unlawful for any person residing in this State, not regularly licensed to practice law, to hold himself out as an attorney at law or to represent himself as authorized to practice law. Section 2 defines certain acts as being "a holding out" within the meaning of section 1. The Appellate Court reversed the judgment and remanded the cause for a new trial. (*People* v. *Goodman,* 259 Ill. App. 667.) Incidentally the Appellate Court stated in its opinion, in substance, that the defendant had the right to handle the claim

of the prosecuting witness, there, before the arbitrator and Industrial Commission, although he was not licensed to practice law. Such alleged fact was not the issue in the cause and the statement in the opinion may be considered as dictum. The gist of the charge was the holding himself out as an attorney and representing himself as authorized to practice law. A judgment or decree will not operate as an estoppel unless the identical issue was raised and decided in the former proceeding. (*Svalina* v. *Saravana,* 341 Ill. 236, 247; *Gouwens* v. *Gouwens,* 222 id. 223; *Sawyer* v. *Nelson,* 160 id. 629.) The issues decided in the criminal case are materially different from those here for determination. The judgment in *People* v. *Goodman, supra,* does not work an estoppel.

The motion to dismiss is denied and the plea of estoppel is held insufficient. The respondent is found guilty of the unauthorized practice of law for which he is adjudged to be in contempt of this court. Inasmuch as the respondent, relying upon what was said in *People* v. *Goodman, supra,* was doubtless sincere in his belief that he had the legal right to conduct the practice he did before the Industrial Commission, although the record conclusively shows the practice of law by him aside from his activities before that body, we are not disposed to inflict a heavy fine upon him.

It is the judgment of this court that the respondent pay to the clerk of this court a fine in the sum of $500, and the costs of this proceeding.

*Respondent found guilty of contempt.*

Mr. JUSTICE ORR, dissenting:

It is not charged that either Albert Goodman, or any of his laymen employees, have attempted to practice in a court of law. His activities, which, by the relator are termed offensive, consist principally in negotiations for settlements in behalf of injured employees, or their representatives, and the giving of advice and filing of claims for adjustment of

compensation. Where negotiations have not resulted in set-
tlements, he has also appeared in person before arbitrators
and the Industrial Commission. It is admitted that when
especially difficult questions of law or fact have occurred,
or when appeals were taken to the circuit court, Goodman
has employed a duly licensed attorney to advise or repre-
sent him.

The precise question involved in this proceeding is a
new one in this State. The jurisdiction of this court to
regulate the admission of attorneys to practice law, and
to discipline or disbar them after admission, is an inher-
ent right. (*In re Day*, 181 Ill. 73.) Likewise in *People* v.
*Peoples Stock Yards State Bank*, 344 Ill. 462, we said that
"under the constitution of this State the judicial power is
vested solely in the courts. * * * Included in this grant
are all powers necessary for complete performance of the
judicial functions." There we held that the power to
license attorneys to practice in this State would be nuga-
tory in the absence of power to control or punish unau-
thorized persons or corporations who presumed the right,
and sought to usurp the privilege, of acting as attorneys.
Acts performed outside of court by one not licensed to
practice were held no less an usurpation of the function
and privilege of an attorney than those attempted, or per-
formed, in the court itself. These statements of the power
of this court to punish for contempt have been approved
and re-asserted in our later decisions. *People* v. *Real Es-
tate Tax-Payers*, 354 Ill. 102; *People* v. *Motorists Ass'n*,
354 id. 595; *People* v. *Chicago Motor Club*, 362 id. 50.

The information does not charge Goodman with the
unauthorized practice of law in any court of record, nor
does it charge him with unlawfully engaging attorneys to
practice law for him. He is not charged with improper
conduct in those cases where he employed licensed attor-
neys to appear for him in courts of record. It is not con-
tended, or charged, that he ever held himself out as licensed

to practice law or offered himself, or any of his employees, to the public as qualified to institute or defend actions at law. The alleged improper conduct charged against him consists altogether of his varied activities in connection with claims arising under the Workmen's Compensation act. These activities were all confined to administrative matters. We have held that the duties and functions of arbitrators and the Industrial Commission are purely administrative and non-judicial in character. (*Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329; *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 id. 167.) The preparation and filing of claims before the Industrial Commission does not involve or require any particular skill or knowledge, legal or otherwise. The claims are prepared on forms furnished for that purpose, much in the same manner as claims against estates or for the collection of insurance or pension claims. As we said in *Grand Trunk Western Railway Co.* v. *Industrial Com. supra:* "The act is almost automatic in practical working. The amounts to be paid are easy of computation and the person or persons to whom they shall be paid are fixed and certain."

Section 16 of the Workmen's Compensation act (Smith's Stat. 1935, chap. 48, par. 153,) recites in part: "The board shall make and publish rules and orders for carrying out the duties imposed upon it by law, which rules and orders shall be deemed *prima facie* reasonable and valid; and the process and procedure before the board shall be as simple and summary as reasonably may be." Section 17 of the same act also provides that "the board shall cause to be printed and furnished free of charge upon request by any employer or employee such blank forms as it shall deem requisite to facilitate or promote the efficient administration of this act," etc. It seems evident from these provisions that the legislature intended the proceedings before the Industrial Commission to be informal and easy of approach, and in fairness to both employer and employee was attempting to institute

a system which would both function promptly and inexpensively. In a recent decision (*Goodman* v. *Beall,* 130 Ohio, 427,) the Supreme Court of Ohio emphasized the informality of the proceedings before the Industrial Commission of that State, saying: "In the vast majority of instances no special skill is required in the preparation and presentation of claims. Ordinarily they consist of statements and affidavits submitted by the employer, the employee, or the latter's dependents, and by others having knowledge of the facts, accompanied by the reports of attending physicians or surgeons, on forms prepared and furnished by the commission. Frequently, the commission has its own representative conduct an independent investigation of the particular claim for the purpose of ascertaining the true situation, and sometimes there are informal oral hearings before a referee. Validity of the claim having been established, compensation is paid on the basis prescribed by the statutes, and the incident is closed. Since the inception of the Workmen's Compensation act, it has been common practice for laymen to assist an injured, or diseased workman or his dependents in the submission of a claim. Often this is done as an accommodation by representatives of the employer or by representatives of an organization to which a claimant may belong, and such usually simple services are for the most part performed in an expeditious and satisfactory manner. In our judgment this is not the practice of law; but in so holding it is neither our intention nor purpose to modify the definition of the practice of law announced in the first paragraph of the syllabus of *Land Title Abstract and Trust Co.* v. *Dworken,* 129 Ohio St. 23, 193 N. E. 650." The Ohio decision is in point and conforms to our own views of the subject matter. It also is in conformity with repeated expressions of the Federal judiciary, which has never exercised any authority or supervision over the practice before various Federal agencies or administrative courts or commissions.

Much reliance is placed by relator on our decision in *People* v. *Peoples Stock Yards State Bank, supra,* but the facts and law in that case are clearly distinguishable from those here presented. In that case it was charged and proved that the bank, a corporation, gave important legal advice and performed many legal services in courts of record through attorneys in its regular employ, charging and collecting the fees therefor and appropriating those fees to its own use and profit. There, attorneys were employed to advise clients in legal matters and to take any action necessary in matters connected with the law and the courts, while here, a layman has employed other laymen, or accountants, to assist him in filing claims, negotiating settlements and conducting hearings before a purely administrative board or body—the Industrial Commission.

In my opinion the motion to strike the information and to dismiss the petition should have been allowed.

Mr. JUSTICE JONES concurs in the above dissent.

Mr. JUSTICE SHAW, also dissenting:

I find myself unable to concur with the views of the majority of the court in this case, and, considering the importance of the issue to the people and the bar of Illinois, it seems necessary to state my reasons. My position is particularly difficult because I can find no reason for disagreeing with the conclusion that the acts of the respondent may very well be said to constitute the practice of law. Furthermore I am convinced that many reasonable people might conclude that his practice is probably detrimental to the public welfare and an infringement on the commonly accepted franchises of the legal profession. None of these things, however, can enlarge our jurisdiction or clothe us with a power which, in my opinion, has never been entrusted to us, but, on the contrary, has been definitely committed to the legislative branch of government.

A study of the majority opinion will disclose that there is no precedent for its holding. The cases cited are for the most part based upon statutes prohibiting the unauthorized practice of law. Some of them concern the discipline of licensed attorneys, and only one, the Minnesota case, even approaches a direct support of the opinion adopted. That case is distinguishable, because there is a wide difference between enjoining an anti-social act on the one hand, as compared with the direct punishment of an individual for a previously undefined offense.

In my opinion the case of *In re Day*, 181 Ill. 73, outlines the entire field of our authority and goes as far as any case can or should go in connection with this subject matter. That case has been widely quoted and approved and, in my opinion, we should accept it without enlargement. It is a clear statement of the principles involved and a safe guide for us to follow. In that case it was held that this court, as the head of the judicial department of government, has inherent power to refuse to accept as its officers any who are not acceptable to it. This holding was based on the constitutional provision which divides government into three parts and forbids any one of those departments from exercising any of the powers delegated to either of the others. On this foundation it is held that the legislature may, under the police power, prohibit certain unfit persons from practicing law, but, it must be noted, that this is permissible only as an exercise of the police power. That is, it is within the legislative domain to protect the public from incompetent, criminal or dishonest lawyers. This power is probably concurrent with our own,—*i. e.*, we have also the same power, but only within our own department of government—in the courts themselves.

It would seem to me that the very essence of our own holdings precludes us from extending any control over the present case. If we say that the legislature may not tell us whom shall be admitted as attorneys, it follows inexorably

that we cannot tell the administrative or executive department whom they shall receive before their boards or commissions. We dare not lose sight of the fact that the respondent in this case is not practicing in this court, nor in any court subject to our appellate jurisdiction. If the rule here contended for by the bar association should be followed to its logical conclusion it would result in absurdities.

Thus, the Commerce Commission holds many hearings on rates, certificates of convenience and necessity, and other matters. It is the practice there, every day, to receive the testimony of engineers, accountants, etc., on examination by other engineers, accountants, and others, without the appearance of any attorney of this court. The Internal Revenue Department of the Federal government makes its own rules as to who may appear before it, and those rules are not based on general legal requirements, but rather on special knowledge of the revenue laws and of accounting. Those appearing before this department advise their clients on many difficult questions of law and evidence which may be said to fall within the duties of an attorney, and the exercise of which would commonly be looked upon as practicing law. So, also, in the insurance and adjusting field, the adjusters for the companies and for the insured persons pass upon the most complicated and difficult interpretation of contracts, mixed questions of law and fact, such as waiver, estoppel, and the like. They are certainly performing duties which would be properly referable to lawyers. Bank officers, managers of collection agencies, justices of the peace and even friends and neighbors of interested parties, are, from day to day, giving advice that might be called legal and the giving of which might properly be referred to some lawyer. To a certain extent, and in a certain way, all of these things might be called "practicing law." They are not within the purview of this court, however, and if to be prevented or prohibited it must be under the police power, for the protection of the public. We have nothing

to do with the police power. It is exclusively within the legislative field, and for legislative consideration. If it be said to be a matter of public policy, that, also, is a legislative matter. Our field is strictly judicial, and the constitution forbids our exercise of any legislative function as effectually as we have held it to forbid the exercise of any judicial function by the legislature. Since we are the judges of our own powers we should be circumspect in abstaining from exceeding them.

I take it that we have no power of punishment for contempt beyond the confines of our own court or some court over which we have appellate or supervisory jurisdiction. It may well be that we can say who shall practice in any court which is subject to our appellate jurisdiction (although even this might be doubted on reason and authority) because we are presumably the fountain head and directing power of the judicial branch of our tri-departmented government. It seems to me equally clear and beyond question, that we have no right to invade the executive or administrative departments. The Industrial Commission is given power to make its own rules and I cannot see any possible way, short of usurpation, by which we can control those rules. The matter of an award of compensation does not come to our department of government until the issuance of a writ of *certiorari,* and what happens up to that time is outside of our sphere. Any control over it is prohibited to us by the very constitutional provision under which we claim our power to regulate admissions to the bar and to disbar or discipline.

The selection and discipline of our own officers is a judicial function within our branch of government. The restraint and punishment of outsiders in the interest of the public is a police power, within control of the legislature and beyond our jurisdiction. It seems to me that the line is drawn squarely across our front door. Those who have submitted themselves to our jurisdiction and discipline by

becoming our officers, and those who presume to appear before us, or as counsel in a court subordinate to our jurisdiction, are subject to punishment by contempt.

Practicing law without a license, or holding one's self out as a lawyer, when not licensed, is a public offense, is so recognized by statute passed pursuant to the police power, and is punishable by indictment the same as any other misdemeanor. Such conduct is not calculated to bring the court into disrepute, nor to impair its dignity. It is merely an anti-social act against the whole community—it is a public offense and no more subject to summary and uncontrolled punishment than any other crime. It seems to me that the respondent's practice is inimical to the public welfare, but if so, it is for the legislature to prohibit and punish it, or for the Industrial Commission to prevent it by proper rules, which are within the power of the commission to enact. It seems to me outside our domain.