(No. 34222.—

*In re* JULIAN J. LUSTER, Attorney, Respondent.

*Opinion filed September 20, 1957.*

CHARLES LEVITON, of Chicago, *amicus cuiae.*

WILLIAM C. WINES, ROBERT A. SPRECHER, and FRANK A. KARABA, all of Chicago, for respondent.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The committee on grievances and the board of managers of the Chicago Bar Association, acting as commissioners under Rule 59 of this court, filed a report recommending that the respondent, Julian J. Luster, be suspended from the practice of the law for one year. He brings the record here for review, upon objections and exceptions to the findings, report and recommendation of the commissioners.

Respondent is charged with repeatedly participating in and aiding and abetting the unauthorized practice of law by a layman, the solicitation of law business and stirring up litigation, and dividing fees received from legal services with a layman.

The complaint specifically alleged that about the year 1947 the respondent, as a lawyer, entered into an agreement to handle condemnation cases referred to him by a layman, Elmer L. Clausen, doing business as a consulting engineer and appraiser. It was asserted that Clausen, prior to and in the year 1947 had actively solicited property owners, whose properties were being condemned by various public bodies, to employ him on a contingent-fee basis to make a survey of their properties and to negotiate settlement with the public body involved. In substance the terms of the employment were that Clausen was authorized and directed to survey the property and make a structural report and to do whatever was necessary to secure proper compensation for the property owner. He was further authorized and directed to employ, on behalf of the property owner, real-estate experts and attorneys to handle such settlement negotiations or litigation that might arise. In return, the property owner agreed to pay Clausen a contingent fee of one third of any excess received over and beyond the amount of the original offer made to the property owner by the public body. Out of his one-third contingent fee, Clausen was to pay all fees and expenses including attorneys' fees and real-estate experts' fees. The complaint further charged that between 1947 and 1951 approximately 500 such matters were referred to respondent pursuant to their agreement.

There is practically no dispute about the facts. The evidence here is largely based upon the testimony of the respondent, freely given in a case against Clausen to restrain the latter from unlawfully practicing law. Most of the facts are detailed in the Appellate Court opinion in that case (*Chicago Bar Association* v. *Clausen,* 1 Ill. App.2d 140) and need not be repeated here.

The *Clausen case* resulted in a decree restraining the defendant from continuing his practices. On appeal, the

Appellate Court affirmed the decree and we denied leave to appeal to this court. 2 Ill. App.2d i.

The defense of respondent was that in the unreported case of *People ex rel. Chicago Bar Association* v. *Lloyd et al,* No. 21768 (1934), this court sustained a finding of the special commissioner that the conduct of the Lloyds, which was similar to that of Clausen, did not constitute the unauthorized practice of law and that he, the respondent, in good faith, relied upon the pronouncement of the court in that case. Respondent strenuously urged before the commissioners and most vigorously repeats the argument here that he had a right to rely upon that decision in judging whether or not his own activities were entirely professional in nature.

The *Lloyd case,* as relied upon by respondent, was an original proceeding instituted in the Supreme Court of Illinois by information, pursuant to which the Chicago Bar Association sought to have the Lloyds punished for contempt of court for engaging in the practice of law and to enjoin them from continuing in such practice. The referral of condemnation cases to respondent by Clausen was fashioned after the *modus operandi* of the Lloyds. In soliciting business the Lloyds communicated by mail with owners of property in both condemnation and special assessment cases.

It is strongly urged by *amicus curiae* that the *Lloyd case* has not been followed and that subsequent decisions of this court have condemned similar practices. In *People ex rel. Chicago Bar Association* v. *Chicago Motor Club,* 362 Ill. 50, the defendant was found guilty of unauthorized practice of law by furnishing legal counsel to its members. In *People ex rel. Chicago Bar Association* v. *Goodman,* 366 Ill. 346, the defendant, not a lawyer, solicited workmen's compensation cases and employed lawyers in those cases where suits were contested. Goodman was found to be guilty of practicing law and adjudged in contempt of court.

Both of such cases were decided subsequent to the *Lloyd case*.

It will be noted that all of the cases commented upon are against the person or organization alleged to be unlawfully practicing law. The case at bar involves the other party to the transaction, *i.e.* the attorney who accepted employment from the person or organization accused. We see no substantial difference. If the acts of the person soliciting the business constitute the unlawful practice of law, it would seem to follow that the conduct of the attorney who enters into a contract to handle the litigation is equally subject to condemnation. No cases, since the *Lloyd case,* are cited, nor have any come to our attention, where disciplinary action was taken against an attorney who performed legal service for the lay organization which was found to be engaged in the unauthorized practice of law.

The facts in the *Lloyd case* and the *Clausen case* are very similar. Each involved solicitation, referral of cases by a layman to an attorney and a division of fees. The *modus operandi* is practically indistinguishable.

The defense of respondent is more than a technical one. It is an equitable defense predicated upon his belief that he had the right to rely upon a decision of this court to mark out the limits of propriety. While we hold that the unreported *Lloyd case* shall not hereafter be regarded as precedent, we are moved to adopt the view that neither respondent, nor other attorneys who have heretofore relied upon it, should be subject to disciplinary action. To hold otherwise would constitute a grave injustice to members of the bar who accepted employment from an organization such as Lloyd's. If the organization itself was held not be unlawfully engaged in the practice of law then it would be unreasonable to say that a member of the bar who was selected to do legal work for such organization was guilty of unethical professional conduct. The action of this court in the *Lloyd case* was not then and is not now intended by

the court to serve as a precedent. However, the *Lloyd case* is a matter of public record and where one, in good faith, relied upon such pronouncement, this court feels duty bound to protect him. It would be a grave injustice to apply our views of the *Lloyd case* retroactively to respondent. Furthermore, the record indicates that there were scores of other lawyers and law firms of unquestioned standing who were similarly misled. The fact that respondent may have been favored by Clausen in the processing of a larger number of cases makes but little difference in the ethical complexion of Luster as compared to those who escaped charges of misconduct.

*Amicus curiae* complains that respondent continued his practices after this court denied leave to appeal in the *Clausen case*. Respondent's behavior in this respect is subject to criticism. With technical propriety, he claims that the *Lloyd case* had not yet been overruled; yet candor and professional character would require that respondent then desist from such practices. In these proceedings, Luster has undergone an expenditure of time and money and suffered humiliation and the criticism of this court, all of which compels the conclusion that he has been adequately punished.

Under the circumstances outlined herein, the report of the commissioners is overruled and the respondent discharged.

*Respondent discharged.*