The Chicago Bar Association, an Illinois Corporation, Not For Profit, Stuart C. Abbey, Mandel L. Anixter, Davis P. Buzane, Richard L. Kahn, John Ligtenberg, John T. Love, John Cadawalder Menk, James T. Mullaney, Curtis F. Prangley, and John A. Watson, Plaintiffs-Appellees, v. Eli Friedlander, Bertha L. Lloyd, Carl F. Lloyd, James J. Prince and Bernard R. Van Haren, d/b/a Lloyd's Property Owners Association of Chicago and Lloyd Realty Company, Defendants-Appellants.

Gen. No. 47,719.

First District, Third Division.

January 29, 1960.

Released for publication March 4, 1960.

Concannon, Dillon, Snook, and Morton, of Chicago (Alexander J. Resa, of counsel) for defendants-appellants.

Charles Leviton, of Chicago (John Rex Allen, Edwin R. Bates, and Bernard Weissbourd, of counsel) for plaintiffs-appellees.

JUSTICE BURKE delivered the opinion of the court.

The Chicago Bar Association and 10 lawyers, individually and as members of the association's Committee on Unauthorized Practice, filed a complaint to enjoin the defendants, who are lay persons, from rendering services alleged to constitute the unauthorized practice of law. The chancellor heard the case upon the complaint, the amended answer and plaintiffs' motion to strike the latter, and he entered a decree in accordance with the prayer of the complaint. Defendants appeal.

The significant elements of the pleadings are expressed in the following quotation from the opinion of the chancellor:

"Defendants conduct their operations as 'Lloyd's Property Owners Association of Chicago' and 'Lloyd's Realty Company.' The acts complained of relate to their representation of property owners in (1) condemnation proceedings, (2) special assessment proceedings, (3) tax rate proceedings, and (4) proceedings relating to the valuation of real estate for tax

131

purposes. Defendants solicit property owners to employ them to represent such owners in condemnation proceedings. In the course of this solicitation, defendants claim long and successful experience in the handling of such matters and state that 'We have a staff of real estate experts and appraisers who know this type of work and also attorneys with long experience in condemnation cases.' When the solicitation is successful, defendants contract to represent the property owners for 25% of any sum obtained over and above the initial offer. In this contract, the property owner authorizes defendants to select an attorney for him (at an additional expense), 'If it is necessary to have an attorney's services and I do not select an attorney.' Defendants engage real estate experts, engineers and construction experts at their own expense to assist them in their efforts. 'Where only questions of valuation were involved,' defendants proceed to negotiate for condemnation awards without the services of an attorney. If their own negotiations are satisfactory, an attorney is employed merely for the purpose of filing the owner's appearance; otherwise the attorney works with defendants in further negotiations and proceeds to try the case if necessary. Through attorneys retained and employed by them, defendants cause appearances, answers and objections to be filed in courts of record. While it is claimed that such attorneys are 'acting as attorney or attorneys for property owners and not as attorney or attorneys, employee or employees, of these defendants,' it appears that only one licensed attorney has been employed by defendants in recent years to represent all property owners involved in condemnation matters. The practices followed by defendants in assessment matters parallel their operations with respect to condemnation cases: solicitation based on a claim of long and successful experience; a contingent fee contract

authorizing defendants to select an attorney for the property owner; the employment of engineers or real estate experts by defendants at their own expense; the employment of an attorney (at an added expense to the property owner) to file and prosecute objections to the assessment. Again it appears that in recent years only two licensed attorneys have been employed by defendants to represent all property owners in special assessment matters. With respect to the contesting of tax rates, defendants circularize and solicit substantially all of the property owners whose names they have accumulated over the years and enter into contingent fee contracts of employment to arrange for the payment of taxes under protest and to file and present objections to the tax rate. They file a letter of protest prepared by their attorney on behalf of such property owners, and employ an attorney to file and prosecute objections to the rates on behalf of such owners. Defendants' operations with reference to valuation of property for tax purposes are substantially the same as in the other three fields. Defendants have emphasized that their services relate to questions of valuation only, are confined to preparatory work, and that they do not appear in court. Certainly the practice of law is not confined to the court room. Nor can defendants take refuge in the fact that their work may be said to be preparatory in nature. The fact is that all of their operations were in connection with matters that ultimately lead to court proceedings or proceedings before an administrative body. Their letters of solicitation make it perfectly clear that their services include those to be performed by an attorney. The preparation of cases for trial and negotiation directed to out-of-court settlements are an integral part of the typical lawyer's work."

■ ■ Defendants maintain that the determination by the Supreme Court on October 22, 1934, in the

133

case of People ex rel. The Chicago Bar Association, et al. v. Clyde F. Lloyd and Frank P. Lloyd, d/b/a Lloyd's Property Owners Association of Chicago, is a binding adjudication of all the issues in the case at bar, and that the chancellor erred in entering a contrary decree. The charges against the respondents in that case were in all pertinent respects identical with the charges in the instant case. The defendants herein say that they "have succeeded" to the partnership of the respondents in the previous case. The Commissioner to whom the case was referred by the Supreme Court reported that the charges against the respondents had not been sustained and recommended the discharge of the rule and the dismissal of the cause. The court disposed of the case by an oral announcement that the recommendations of the commissioner were approved, the rule discharged and the cause dismissed. Defendants in the instant case say that whether the earlier adjudication is to be regarded as *res judicata* barring a second action on the same charge or as estoppel by judgment barring a second litigation, or as *stare decisis* determining the lawfulness and propriety of the services rendered by them, the result must be that the plaintiffs are not entitled to a decree because both cases raise the same issue, namely: Does what the defendants are doing constitute the practice of law? Manifestly, the respondents in the cases are not the same. It cannot be said that defendants herein are in "privity" with the defendants in the previous case. Defendants' position that the relief sought is barred by *res judicata* or estoppel by judgment cannot be sustained. Our Supreme Court in In re Luster, 12 Ill.2d 25, 28, said that "the unreported Lloyd case shall not hereafter be regarded as precedent, . . . ." The chancellor was right in deciding that the unreported decision in the first Lloyd case should not be considered as a precedent or influence the court in deciding the instant case.

134

■ Defendants insist that the services they render do not constitute the practice of law. Our courts have condemned the practice of law by collection agencies (Midland Credit Adjustment Co. v. Donnelley, 219 Ill. App. 271; People v. Securities Discount Corp., 279 Ill. App. 70, affirmed 361 Ill. 551; Smith v. Illinois Adjustment Finance Co., 326 Ill. App. 654), practices by individuals covering real estate and allied transactions (People ex rel. Illinois State Bar Assn and Chicago Bar Assn v. Schafer, 404 Ill. 45; People ex rel. Chicago Bar Assn v. Tinkoff, 399 Ill. 282), the practice of law by patent agents (Chicago Bar Assn et al. v. Kellogg, 338 Ill. App. 618), as well as that of banks (People ex rel. Illinois State Bar Assn et al. v. People's Stock Yards State Bank, 344 Ill. 462), and motor clubs (People ex rel. Chicago Bar Assn v. Chicago Motor Club, 362 Ill. 50; People ex rel. Chicago Bar Assn v. The Motorists Assn of Illinois, 354 Ill. 595).

In the Luster case (12 Ill.2d 25) the court pointed out that the defense of the respondent was that in the unreported Lloyd case the court sustained a finding of the special commissioner that the conduct of the Lloyds "which was similar to that of Clausen, did not constitute the unauthorized practice of law and that he, the respondent, in good faith relied upon the pronouncement of the court in that case." In rejecting this contention the court said further: "The facts in the Lloyd case and the Clausen case are very similar. Each involved solicitation, referral of cases by a layman to an attorney and a division of fees. The *modus operandi* is practically indistinguishable." In People v. Goodman, 366 Ill. 346, the court said (351):

"This court and other courts have always been reluctant to adopt an all inclusive definition of the term 'practice of law.' It has been held that 'persons acting professionally in legal formalities, negotiations or proceedings by warrant or authority of their clients' are

135

engaged in the practice of law. . . . It is urged that the practice by the respondent before the Industrial Commission is before an administrative body, and that the respondent, therefore, is not practicing law because he is not before a court. . . . It is elementary that a great portion of the present day practice of law is conducted outside the court room. . . . The General Assembly has no authority to grant a layman the right to practice law (In re Day, supra.). It follows that any rule adopted by the commission, purporting to bestow such privilege upon one not a duly licensed attorney at law, is void. Nor can the General Assembly lawfully declare not to be the practice of law, those activities the performance of which the judicial department may determine is the practice of law. . . . We hold that the court has jurisdiction of the respondent and that the institution of proceedings before the Industrial Commission, and his trial of those causes before the arbitrator and the commission, constituted the practice of law."

In Parker v. Kirkland, 298 Ill. App. 340, the court said (350):
"Where the contention has been made that the board of appeals is purely an administrative body, the courts of this State have consistently held that in reviewing assessments it possesses powers of a *quasi* judicial nature."

Defendants say that services similar to some of the services performed by them were approved by the Supreme Court in In re Brotherhood of Railroad Trainmen, 13 Ill.2d 391. There are so many differences in the factual situations of the two cases that we do not consider the Brotherhood case a precedent for the defendants.

Defendants assert that the decree ought to be reversed because it is so drawn that they cannot ascer-

136

tain what they are forbidden to do and what, if anything, they may lawfully do, citing Burton v. Aetna Life Insurance Co., et al., 229 Ill. App. 517, 520; Roesch Enamel Range Co., et al. v. Carbine, 247 Ill. App. 248, 249; and Evans, et al. v. Johnston et al., 300 Ill. App. 78, 95. In drafting the decree the chancellor followed the language of the Clausen case, 1 Ill.App.2d 140. We think that the defendants will understand what they are restrained from doing. No part of the decree purports to restrain them from doing anything which does not involve the practice of law.

Because the defendants apparently acted in good faith in reliance on the adjudication of the Supreme Court in 1934 and following the precedent in the Brotherhood case (13 Ill.2d 391), we are of the opinion that they should have a reasonable time in which to dispose of their pending matters, and that the decree should be modified to enjoin them from rendering the services complained of after December 31, 1960. The decree of the Superior Court of Cook County is modified to enjoin the defendants from rendering the services complained of after December 31, 1960, and as modified is affirmed.

Decree modified and affirmed.

BRYANT, P. J. and FRIEND, J., concur.