Atchison, Topeka and Santa Fe Railway Company, Appellee, v. Sol Andrews et al., Appellants. Southern Pacific Company, Appellee, v. Sol Andrews et al., Appellants.

Gen. No. 44,394.

Opinion filed October 11, 1949. Additional opinion filed and rehearing denied October 25, 1949. Released for publication October 26, 1949.

Jesse H. Brown, of Chicago, for appellants.

Poppenhusen, Johnston, Thompson & Raymond, Jonathan C. Gibson and Thomas J. Barnett, all of

Chicago, GEORGE L. BULAND and LAWRENCE L. HOWE, both of San Francisco, for appellees; FLOYD E. THOMPSON, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The Atchison, Topeka and Santa Fe Railway Company, a corporation (hereinafter also called Santa Fe), and Southern Pacific Company, a corporation (hereinafter also called Southern Pacific), plaintiffs, each brought an action against Sol Andrews, Noah Andrews and J. Shane, defendants, in which they prayed for certain temporary and permanent injunctions against defendants and all persons acting under them. The two cases were consolidated and tried together. Sol Andrews and Noah Andrews, defendants, appeal from a decree entered in favor of plaintiffs.

The complaint of Santa Fe alleges, in substance, that it operates a railroad which traverses nine states between its eastern terminus in Illinois and its western termini in California; that Sol Andrews, defendant, is an attorney at law, licensed to practice in Illinois, and resides and maintains a law office in Chicago; that he has never been a resident of California, Arizona or New Mexico and has never been licensed to practice law in said states; that J. Shane, defendant, is an associate of Sol Andrews; that Noah Andrews, defendant, is not an attorney at law, but that under the style "Sylvan Associates" (hereinafter also called Sylvan) he solicits clients for Sol Andrews; that Sylvan provides for the maintenance of said clients; that Sol Andrews has employed Noah Andrews, Floyd Kaneaster, and other laymen, as "chasers" to procure contracts with persons asserting claims against Santa Fe, and has provided these chasers with contingent fee contract forms and other paraphernalia used in the solicitation of his employment as an attorney by Santa Fe employees; that pursuant to said scheme he has filed

against Santa Fe in the Superior court of Cook county between September 18, 1945, and March 4, 1946, 40 actions at law in behalf of persons residing in California, Arizona or New Mexico, which allege causes of action arising out of accidents alleged to have occurred in said states; that the average distance from Chicago to the point of the alleged accidents is 1,930 miles; that the aggregate of the damages claimed in said cases is $2,060,000; that notices of attorney's lien have been filed in other cases and that additional actions will be filed in due course in said court in cases of like character to the foregoing; that the foregoing cases were procured pursuant to representations by the chasers that the actions would be filed in Chicago; that Santa Fe will be put to great inconvenience and expense in defending the cases in Chicago; that it will have difficulty in procuring the attendance of witnesses there, and that favorable settlements will be obtained in most cases; that large verdicts will be procured in cases where settlements cannot be effected; that Sol Andrews will maintain the cases and support the clients while the cases are pending; that he and his confederates are disrupting the relations between Santa Fe and its employees and have induced some employees of plaintiff to secretly enter into the conspiracy; that there are duly functioning courts, state and federal, in said states, open to all litigants for the prompt and efficient adjudication of any meritorious claims against plaintiff arising out of injuries suffered by its employees and that the proceedings in said courts have always been conducted expeditiously; that Sol Andrews has never prosecuted a case in any of said courts and that he has no reputation in any of said states of skill in the trial of personal injury claims; that there are available to all claimants in said states capable and reputable attorneys licensed to practice in the courts of said states and who regularly practice in said courts; that Sol Andrews was a stranger to all the persons on be-

half of whom he has filed actions at law against plaintiff in the Superior court and that he was retained by the plaintiffs in said cases solely as a result of solicitation by his chasers; that plaintiff is injured in its property by the acts of Sol Andrews and his confederates, by the misrepresentations made by said Andrews and his confederates as to the attitude of plaintiff toward its injured employees, and is injured by the said interference with the relations between plaintiff and its employees, and by the added expense and inconvenience of trying cases nearly 2,000 miles from the place of the alleged injury; that plaintiff has no adequate remedy at law against the illegal and inequitable conduct of Sol Andrews and his confederates and that unless it is granted relief from the scheme of said Andrews and his confederates it will be denied a certain remedy for the injuries and wrongs it has received, in violation of the Federal and State Constitutions. An amendment and supplement to the complaint alleges that the total amount of damages claimed in the "imported" cases is $2,780,000, and challenges the validity of the notices of attorney's lien filed by said Andrews. Motions of defendants Sol and Noah Andrews to dismiss the complaint on the ground that it failed to allege facts setting forth a cause of action for equitable relief were overruled. Defendants then filed an answer to the complaint, in which they denied the allegations of the complaint and averred that the clients of Sol Andrews had a legal right to file their actions in Cook county, Illinois. Santa Fe, plaintiff, replied to the answer.

The complaint of Southern Pacific contains similar charges to those contained in the complaint of Santa Fe; also alleges that it operates lines of railroad, but not in the State of Illinois, and that its eastern termini are at Ogden, Utah, and Tucumcari, New Mexico; that between July 11, 1945, and April 12, 1946, defendant Sol Andrews, in furtherance of the alleged scheme, filed

in the Superior court of Cook county 34 actions at law against it on behalf of plaintiffs residing in California, Arizona or New Mexico, in which actions the injuries are alleged to have been suffered in California, Arizona or New Mexico; that the average distance from the point of the alleged accidents to Chicago is 2,148 miles and that the total amount of damages claimed is $2,135,000; that notices of attorney's lien have been served by Sol Andrews in other cases of like character, and additional cases will be filed by him in the Superior court in due course. An amendment to the complaint alleges that the said notices of attorney's lien are void. After motions of defendants Sol and Noah Andrews to dismiss the complaint were overruled, they filed an answer denying the allegations of the complaint and averring that Sol Andrews' clients had a legal right to file their actions at law in Cook county, Illinois.

The consolidated cases were referred to a master in chancery and after a lengthy hearing he filed a report finding that the allegations of the respective complaints were proved without substantial dispute; that plaintiffs were entitled to the relief prayed, and recommended that a decree be entered in accordance with the prayers of plaintiffs. Defendants' objections to the master's reports were ordered to stand as exceptions and the cases came on for hearing before an able and experienced chancellor, Judge SCHWARTZ, who delivered an opinion when he decided the cases. Therein the chancellor discussed at some length the question as to whether the Superior court was compelled to try the personal injury cases commenced by Sol Andrews under the Federal Employers' Liability Act, and as to whether, under the facts, the principle of *forum non conveniens* could be invoked by the instant plaintiffs against the plaintiffs in the suits commenced by Sol Andrews. While the chancellor expressed his opinion upon the two questions, he properly concluded that as the plaintiffs in the suits commenced by Sol Andrews

were not parties to the instant proceeding he could not dispose of their rights in the instant proceeding and that the trial judges would have the right to hear and determine these questions when the cases were reached for hearing. The two questions, therefore, are not involved in this appeal. We deem it helpful to quote certain salient parts of the opinion of the chancellor:

"The above two cases . . . involve identical issues. . . .

". . .

"The Master heard the evidence consisting of more than four thousand pages of testimony and numerous exhibits [plaintiffs introduced 353 exhibits, and defendants, 110] and made his report. . . .

"The Master, in his findings of fact, gives a detailed account of the conspiracy, commencing with the employment of Floyd Kaneaster in May, 1945. Kaneaster was at that time Yardmaster for the Santa Fe Railroad Company and Andrews employed him to investigate a personal injury case [against Santa Fe]. In June, 1945, Sol Andrews caused to be organized the Sylvan Associates, being a partnership between Noah Andrews and Sylvia Andrews, the wife of Sol Andrews. This organization was formed ostensibly for the purpose of investigating personal injury cases but in reality for the purpose of soliciting cases for Sol Andrews. Its capital of $2,500.00 was contributed by Sylvia Andrews. Floyd Kaneaster was employed as 'the Manager of Public Relations' for Sylvan Associates. Thereafter, various brakemen, switchmen, yardmasters, a railroad clerk and others were employed to solicit claims against the railroad companies on behalf of Sol Andrews, with the understanding that suits on said claims would be filed in the courts of Cook county. Nurses and orderlies in hospitals were also enlisted in the scheme. An illustration of the method used by the defendants is indicated by the testimony of one Otto K. Huenergardt, a claim agent for the Union

Pacific. He testified that Kaneaster asked him to join their organization and told him that if, as result of having joined their organization, he should be discharged by the railroad company, Kaneaster would give him a territory to work and would pay him 10% of Sol Andrews' fees on all cases which he had obtained for Andrews. On the basis of that he was told that he would make $100,000 to $200,000 per year.

"This is no simple case of ordinary solicitation of law business by a lawyer. The magnitude and character of the business is demonstrated by these facts. There are ninety-two claims involved with aggregate damages claimed approximating $5,000,000. This does not embrace all the business done in the course of a few months. In that short time Sol Andrews had made an investment of approximately $200,000 in advances for the scheme, of which Joseph D. Shane advanced approximately $50,000. Railroad employees who were in key position to influence the selection of lawyers were enticed into becoming 'chasers' of law business on a full or part time basis. Each claimant was urged to become a solicitor for additional claims and arrangements were made to pay him a percentage of the fees.

"It is conceivable that if all had gone well with the scheme Chicago would have become the personal injury litigation capitol of the United States. Its courts would have become clogged with cases filed by plaintiffs living in distant places concerning facts which occurred far from the scene of the trial and testified to by witnesses brought great distances.

". . .

"It seems clear to me that we have the right to protect this court's good name and its misuse in such schemes as were here used.

"In my opinion, the plaintiffs in this case have rights which have been violated by the defendants. The diversion of the attention of their employees and the interest in their work from that of the ordinary duties of

brakemen, switchmen, clerks and yardmasters to the get-rich scheme of the defendants, based upon unethical and inequitable conduct, is an invasion of their rights.

". . .

". . . The burden is not alone on the carriers in the disruption of their business but on the injured workmen beset with the problem of selecting from one-half or two-thirds of the United States a lawyer and a forum in which he may litigate his claim, while fellow workmen, who have been lured by the prospect of participating in any money recovered, urge upon him that he go to remote places and select wholly unknown lawyers and doctors and courts to serve him. I count it no boon to the working man to thus involve him in a dice game for big stakes, only a fraction of which will ever get to him. It seems to me we had better restore, in some degree, the fundamental truth that the ideal of justice should be fairness and equality. . . .

". . .

". . . I can, however, restrain Sol Andrews, as a lawyer, from prosecuting these suits, and also restrain him and Noah Andrews from further solicitation or enticement of employes.

"In his report the Master recommended that the decree in this case should find that all of the contracts entered into by Sol Andrews with the injured employees of the plaintiffs were procured by solicitation, pursuant to the plan or conspiracy as shown by the evidence and that all attorneys' liens, notices of which were served by Sol Andrews or J. Shane, or one or both of them, in connection with the claims of said injured employees should be declared null and void. I am of the opinion that this court cannot adjudicate the rights of the parties to the retainer contracts because the injured employees who signed such contracts are not parties to this suit. As to the attorneys' liens, however, the statute was passed for the benefit of attorneys

and provides for service of notice of liens upon the party against whom the client of the attorney may have a claim, so that controversies which arise under this act are between attorney for the claimant and the party against whom the attorney's client had a claim.

"In the case of *Puls v. Chicago & Northwestern Railroad Company*, 233 Ill. App. 625, the court held that in refusing to enforce a contract or a lien the court did not act for the benefit of either respondent or counsel 'but in the maintenance of its own dignity, the public good and the laws of the state.' Considering the extent and character of the conspiracy, the conclusion is warranted that all of these cases were obtained through the conspiracy, and that being so, there is, in my opinion, basis for holding the attorneys' liens invalid. The decree may so find.

"The decree may provide for an injunction to restrain Sol Andrews, as attorney, permanently from further prosecuting in the courts of Cook County, Illinois, the actions set forth in Exhibits A and B attached to the complaint filed March 6, 1946 and the actions set forth in the amended and supplemental complaint filed on October 9, 1946 and the actions set forth in the complaint of the Southern Pacific Railway and in said decree the said defendant, Sol Andrews, be also restrained from soliciting employment as an attorney for injured employees of the plaintiffs and from agreeing to divide fees with laymen, and that in said decree the defendant Noah Andrews, his agents and associates, and all persons acting under his direction or supervision be also restrained from soliciting the employment of the defendant Sol Andrews as attorney for injured employees of the plaintiffs.

"As to the defendant J. Shane or J. D. Shane, I cannot but believe that he knew quite well for what purpose he was advancing $50,000.00 or more. It is of little moment whether he describes himself as a lender or as an investor. However, he is not to be classed with

Sol Andrews. Even if we draw the most unfavorable conclusions, he was in the transaction for only a short time, recanted quickly and terminated all his interest. The matter is now moot so far as he is concerned and an injunction writ is meaningless to restrain an act no longer being done and which in all likelihood will never again be done. However, I believe that Shane should be taxed with part of the costs and in the decree it shall be provided that one-fourth of the taxed costs shall be assessed against the defendant Shane.''

Judge SCHWARTZ then entered the decree, which overruled the exceptions of the defendants to the reports of the master; found that the equities were with plaintiffs and that they were entitled to the relief prayed in their complaints, as amended; found that the notices of attorneys' liens filed with plaintiffs by defendants Sol Andrews and J. Shane (which notices have been heretofore withdrawn as to defendant Shane), were secured by defendant Sol Andrews in a manner contrary to the ethics of the legal profession and the law and public policy of this State, and are invalid and of no effect. It further decreed that

''5. *Defendant Sol Andrews* is permanently restrained from prosecuting *in this Court* the actions described in Exhibits A and B attached to the complaint of The Atchison, Topeka and Santa Fe Railway Company, as amended and supplemented, and the actions described in Exhibits A and B attached to the complaint of Southern Pacific Company, as amended, from soliciting employment as attorney for injured employees of plaintiffs, and from agreeing to divide fees with laymen engaged as touters and solicitors, and writ of injunction shall issue accordingly.

''6. Defendant Noah Andrews and his agents, confederates and associates, and all persons acting under his direction and supervision, are permanently enjoined from soliciting, directly or indirectly, the em-

ployment of Sol Andrews as attorney for injured employees of plaintiffs, and writ of injunction shall issue accordingly.

"6A. The case having become moot as to defendant Joseph D. Shane, the complaint is dismissed as to him."

Plaintiffs state: "It is the theory of plaintiffs that it is contrary to law for an attorney, directly or by confederates, to disrupt the relations between an employer and its employees, to foment litigation between an employer and its employees, to procure by solicitation his employment as attorney for injured employees, to transport into this jurisdiction claims of persons residing in foreign states and which arise out of transactions occurring in foreign states, to use the processes of the courts of Illinois to carry out an illegal scheme of procuring and importing into this state causes of action of non-residents arising out of transactions occurring outside this state, to add unnecessarily to the burden of a defendant by increasing the cost of its defense by prosecuting a claim against it at a point distant from the occurrence out of which the cause of action arises and in a jurisdiction where witnesses are not subject to subpoena, and otherwise to deprive a defendant of its civil rights and to invade its property rights. The plaintiffs at bar are injured in their property by the wrongful acts of Sol Andrews, Noah Andrews and their confederates in the illegal scheme alleged and proved, in that the relations between them and their employees are disturbed and that they are deprived of a fair opportunity to defend the actions brought against them on the imported claims here involved and are put to unnecessary and extraordinary expense and inconvenience in making their defenses in the Superior Court of Cook County in cases involving accidents which occurred some 2,000 miles from Cook County, Illinois."

Defendants state their theory as follows:

"(a) That, as a matter of law, a Court of Equity has no jurisdiction over the defendant as a member of the Bar under the facts alleged in the complaint. The defendant holds a license from the Supreme Court of Illinois to practice law and any challenge of his right so to do must be made before that Court, which alone has the power wholly, or in part, to take away his license and his right to practice. The only limitation upon this statement is the right of a particular judge to suspend for cause a lawyer from practicing in the court over which he presides for such time as he may determine.

"(b) The position of plaintiffs, as shown by the complaints has absolutely no support in any decisions in this or other states.

"(c) The allegations of misconduct on the part of the defendant, Sol Andrews, were not proven. There is no evidence to show that any of the persons alleged to have been employed to solicit cases were employed by Sol Andrews and no evidence to prove that any of them ever received one penny from Sol Andrews for such service.

"(d) The evidence discloses that Sol Andrews legally and ethically employed Sylvan Associates, (a partnership, organized by his wife and brother) to handle at a fixed fee all investigations required in his cases. The employees of Sylvan were not employees of Andrews; their work was done for Sylvan, not Andrews, and they drew salary from Sylvan, not Andrews.

"(e) No showing has been made that any so-called 'chaser' ever received one penny from Sol Andrews for soliciting or procuring a client.

"(f) Under the law and on the facts the complaints should have been dismissed for want of equity."

Defendants make but two points in their brief, viz: "I. Courts of equity have no general power to enjoin a lawyer from representing his clients at the complaint

of the other party. II. Plaintiffs failed to establish by any competent credible evidence the allegations of the complaints.'' Neither in the points made nor in their theory of fact do defendants question the injunctional order entered against Noah Andrews, his agents, etc. Nor do defendants complain as to that part of the order restraining Sol Andrews ''from soliciting employment as attorney for injured employees of plaintiffs, and from agreeing to divide fees with laymen engaged as touters and solicitors . . . .''

Point I and the entire argument in support of it apply only to defendant Sol Andrews. Noah Andrews was not a lawyer. Shane, an original defendant, is a lawyer, but sometime during the hearing he ''recanted''—to use the expressive language of the chancellor—terminated his interest in the Sol Andrews scheme, paid the judgment for costs entered against him, and sued Sol Andrews for moneys he had advanced him. Shane testified that he released his interest in the liens that had been entered in the cases because his attorney felt that if he did not do so it would create the impression that he ''was involved in the cases.'' Shane has not appealed from the decree. In support of point I defendants argue that the restraining order as to Sol Andrews took away, in part, his right to practice law, and, therefore, it was in the nature of a disbarment judgment; that ''the power to disbar a lawyer is, in Illinois, vested by statute in the Supreme Court which granted him his license,'' and that the chancellor was without power to enter the restraining order against Sol Andrews. Point I is a plain attempt to raise a false issue. The injunctional order entered against Sol Andrews did not disbar nor attempt to disbar Sol Andrews, nor did it restrain him from practicing his profession—even in the Superior court of Cook county. The order permanently restrained ''defendant Sol Andrews'' from prosecuting in the Superior court the actions described in the com-

plaints. In passing upon the restraining order it must be kept in mind that Sol Andrews stood before the chancellor as a defendant in the proceedings; that the proof conclusively showed that he was the creator and active head of the conspiracy charged in the complaints; that the cases that he afterward commenced in the Superior court of Cook county were obtained through the conspiracy charged, and that they were commenced in the said court with the avowed purpose of forcing plaintiffs to settle the cases or to try them in that court under conditions that would deprive them of a reasonable opportunity to defend them save at grossly excessive costs, serious interference with their operation, and under other grave hardships set forth in the complaints and proved by the evidence. The chancellor was fully justified in concluding from the evidence that defendant Sol Andrews planned to misuse the Superior court and its processes in furtherance of the conspiracy. When the chasers solicited cases for Sol Andrews they pointed out to the injured employees that it would be difficult and expensive for the railroads to bring doctors, nurses, technicians, trainmen and other witnesses to Chicago for the trial and that therefore the railroad companies were more likely to make settlements, and that if the cases were tried in Chicago larger verdicts could be obtained there than in the states where the accidents occurred. The chancellor did not restrain the plaintiffs in the suits commenced by Sol Andrews from prosecuting them in the Superior court, and defendant Sol Andrews is in no position to argue or suggest that the said plaintiffs were handicapped by reason of the injunctional order against him. When plaintiffs commenced the instant suits Sol Andrews wrote letters to his clients, the plaintiffs in the said suits, in which he stated that if an injunctional order was entered against him in the instant cases that would prevent him from prosecuting the suits he would see that they would ''be well represented by competent

attorneys'' and, ''You may also rest assured that *we* will bring your case to trial just as fast as it is possible to do so here in Cook County.'' (Ital. ours.)

Defendants also argue ''that, as a matter of law, a Court of Equity has no jurisdiction over the defendant as a member of the Bar under the facts alleged in the complaint,'' and that the injunctional order entered against Sol Andrews finds no support in any decision in this or other states. In passing upon this argument the nature, scope and purpose of the conspiracy charged must be considered.

■■ Barratry, champerty and maintenance were offenses at common law. Each is *malum in se*. (*Gilbert v. Holmes,* 64 Ill. 548, 555; *Geer v. Frank,* 179 Ill. 570, 574.) The public policy of Illinois against fomenting and maintaining litigation is declared by the statutes and decisions of our courts. Paragraphs 65 and 66, chap. 38, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 37.040, 37.041], make barratry and maintenance unlawful. ''Blackstone defines champerty (vol. 4, p. 135,) as 'a species of maintenance, and punished in the same manner . . . .' '' (*Thompson v. Reynolds,* 73 Ill. 11, 13.) ''Champerty is *malum in se,* or an offense at common law. 2 Pars. on Cont. 765–6; 2 Story's Eq. above cited [2 Story Eq. Jur. secs. 1048–1049]; *Key v. Vattier,* 1 Ham. (Ohio), 132; *Slade v. Rhodes,* 2 Dev. and Bat. N. C. Eq. R. 24; *Thurston v. Perceval,* 1 Pick. 415.'' (*Gilbert v. Holmes,* 64 Ill. 548, 555.) The same public policy is declared in the statutes of California, Arizona and New Mexico. The evidence in support of the charges of champerty and maintenance shows a brazen contempt for the law, legal ethics, and the rights of plaintiffs. The practice of champerty and maintenance reached a new low level when members of the instant conspiracy induced, by promises of reward, certain Santa Fe employees to secretly enter into the conspiracy against their employer.

The Illinois Constitution of 1870 (Art. II, Sec. 19) provides:

"Sec. 19. Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay."

This wholesome constitutional mandate would seem to apply with special force to an unusual case like the present one. As stated by the chancellor, "This is no simple case of ordinary solicitation of law business by a lawyer." The evidence shows that the extra expense for each of the railroads in defending the suits approximately 2,000 miles from the place where the causes of action arose would amount to more than $100,000, at least. Plaintiffs argue, with force, that the damages caused by the unconscionable scheme of defendant Sol Andrews to enlist employees of plaintiffs to serve him to the injury of their employers cannot be measured in dollars. It is not strange that no champerty nor maintenance case has been found that is comparable to the instant one. In view of the magnitude, nature and purpose of the conspiracy charged, the instant case is *sui generis*. Our Supreme court, in *Dodge v. Cole,* 97 Ill. 338, said (p. 364):

". . . The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind, and the great principles of natural justice, which are recognized by the courts as a part of the law of the land, and which are applicable alike to all conditions of society, all ages, and all people. Precedents are useful as evidences of what the law is, and serve as guides in the application of those principles. Where it is clear the circumstances of the case in hand require an applica-

tion of those principles, the fact that no precedent can be found in which relief has been granted under a similar state of facts is no reason for refusing it."

There are, however, several cases that have a bearing upon the question before us. In *McCloskey v. San Antonio Public Service Co.* [Tex. Civ. App.], 51 S. W. 2d 1088, it was held that a court of equity had jurisdiction to enjoin McCloskey from fomenting litigation by soliciting his employment as the representative of persons asserting claims against the San Antonio Public Service Company and *from maintaining litigation to enforce such claims.* McCloskey was not an attorney, but he employed attorneys to assist him when it was necessary to bring an action. It seems plain that the Texas court would have enjoined McCloskey if he had been an attorney. His activities were somewhat similar to certain of the activities of Noah Andrews in the instant case. In *Chicago, B. & Q. R. Co. v. Davis* [111 Neb. 737], 197 N. W. 599, attorneys were enjoined from soliciting cases in Nebraska for prosecution in Minnesota. The opinion states (p. 601): "The conduct of the defendants, if persisted in, would entail upon the plaintiff financial loss, by way of expenses in defending itself in a foreign jurisdiction."

As to point II: This point is devoid of merit. After a careful consideration of the evidence we are satisfied that plaintiffs proved the material allegations of their complaints beyond a reasonable doubt. The active and important part taken by Sylvan in furtherance of the conspiracy is so conclusively proven that Sol Andrews, head, director and beneficiary of the conspiracy, is forced to take the position that the employees of Sylvan were not his employees; that "Sylvan Associates was in truth a partnership independent of and created with the funds of others than Sol Andrews," and that he is not bound by the acts of Sylvan. It appears from his own testimony that after he met and talked with Floyd Kaneaster, in Los Angeles, California, in May, 1945, he

returned to Chicago, and about the end of that month Sylvan Associates was created at his request; that Sylvan was a partnership consisting of Noah Andrews, his brother, and Sylvia Andrews, *Sol Andrews' wife;* that he and Sylvan occupy the same offices, at 160 N. LaSalle street, Chicago; that the sign on the door of the offices reads as follows:

"Law Offices
Sol Andrews

. . .

Sylvan Associates"

The testimony of Sol Andrews further shows that except for an initial $2,500 that he testified was furnished by Sylvia Andrews, the moneys used by Sylvan were furnished by him; that "they have no income except what I paid them." The evidence shows that Sol Andrews paid to Sylvan during the year of its operation $71,496.06; that when Sylvan was created Floyd Kaneaster, then a yardmaster in the employ of Santa Fe, was employed by Sylvan as "the Manager of Public Relations," and he thereafter took a very active part in furtherance of the conspiracy. A Chicago bank account was opened for Kaneaster July 19, 1945, with a $500 deposit made by Sol Andrews. The deposits to that account between July 19, 1945, and April 15, 1946, aggregated $29,230, and no other reasonable conclusion can be drawn from the evidence than that the said deposits were made directly or indirectly by Sol Andrews. The chasers employed by Sylvan carried Sol Andrews' printed retainer forms. Joseph C. Smith testified that in a conversation with Sol Andrews, about August 1, 1945, the latter told the witness that Floyd Kaneaster was his representative. James Stanton and Gail McKemy were employees of Sylvan, and Sol Andrews in correspondence with clients spoke of them as "members of his staff." It would unduly

lengthen this opinion to state all of the evidence that proves conclusively that Sol Andrews created, financed and controlled Sylvan in its operations. It is clear that he created Sylvan upon the assumption that it would serve as a shield to protect him from charges of champerty and maintenance. Defendants attempt to dispose of the mass of oral testimony introduced by plaintiffs in support of their complaints by contending that that testimony is perjury. Plaintiffs also introduced documentary evidence that strongly supports the allegations of the complaints. It is unnecessary to refer to the 353 exhibits introduced by plaintiffs, especially as defendants, in their brief, avoid any reference to this documentary evidence. Although Floyd W. Kaneaster, Ray Rich, James Stanton, Gail McKemy, A. R. Lewin, Paul Martyr, Donald Andrews, H. S. Rudnick, M. Tutor, E. R. Bohrer and R. Van Hoff are shown by the evidence to have been active confederates of Sol Andrews in furtherance of the conspiracy, defendants did not call any of these persons as witnesses.

The real defense of Sol Andrews amounts to this: That even if he was guilty of the charges in the complaint, and even if it were true that he was using the Superior court of Cook county in furtherance of the conspiracy charged, nevertheless, he is an attorney, licensed to practice law, and represents the plaintiffs in the suits in question, and equity was without power to enter the restraining order against him. Defendant cites no authority in support of his position. It would be a strange principle of law that would allow Sol Andrews to use his license to practice law as a defense to the charges contained in the complaints.

In view of the extraordinary circumstances shown in the instant record it is our considered judgment that the chancellor had the equitable power to enter the injunctional order restraining defendant Sol Andrews from prosecuting in the Superior court the actions described in the complaints.

In our opinion, justice demands that the decretal judgment of the Superior court of Cook county be affirmed and it is affirmed.

*Decretal judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.

ADDITIONAL OPINION UPON PETITION FOR REHEARING.

Defendants have filed a petition for a rehearing in this case in which they contend, *inter alia,* that ''The decree was too broad. In the case at bar, the conclusion reached by the Court makes no distinction between Andrews' clients as to whether they were solicited or not and as to whether they participated in solicitation or not.'' It is sufficient to say in answer to this contention that it is a plain afterthought, and that it was not raised in defendants' brief nor even mentioned in ''Defendants' theory of the case.'' Under the rules of this court the contention cannot be raised for the first time in defendants' petition for rehearing. We do not mean to intimate, however, that there would be merit in the contention if it had been raised in defendants' brief.

We find no merit in the petition for rehearing and it is therefore denied.

*Petition for rehearing denied.*

FRIEND, P. J., and SULLIVAN, J., concur.