Chicago Bar Association et al., Appellees, v. Elmer L. Clausen. Trading as Clausen and Company, Appellant.

Gen. No. 46,093.

Opinion filed December 22, 1953. Rehearing denied January 22, 1954. Released for publication February 19, 1954.

■■■■■■■■■

■■■■■■■■

Augustus L. Williams, Myer H. Gladstone, and Moore, Wimbish & Leighton, all of Chicago, for appellant; George N. Leighton, and Albert W. Jones, both of Chicago, of counsel.

Charles Leviton, and John Rex Allen, both of Chicago, for appellees; Ross S. Welch, John F. Sembower, Curtis F. Prangley, and James T. Mullaney, all of Chicago, of counsel.

Mr. Justice Tuohy delivered the opinion of the court.

Plaintiff Chicago Bar Association and certain of its members, individually and as members of the Committee on Unauthorized Practice of Law of said Association, brought their suit in equity against defendant Elmer L. Clausen, d/b/a Clausen and Company, to restrain said defendant from performing certain acts alleged to constitute the unlawful practice of law. The matter was referred to a master in chancery, and, after a lengthy hearing, exceptions to the master's report were overruled, and a decree was entered causing an injunction to issue permanently restraining the defendant, his agents and employees from: (1) directly or indirectly engaging in the practice of law; (2) directly or indirectly fomenting and soliciting litigation; (3) directly or indirectly performing, furnishing and rendering legal services and advice; (4) directly or indirectly charging and collecting fees for legal services; (5) directly or indirectly negotiating by himself or through attorneys, on behalf of property owners, for higher condemnation awards than those originally offered by the condemning authorities prior to or subsequent to litigation, or contesting condemnation proceedings, with a view of effecting an increase in damages for persons represented by him; (6) directly or indirectly rendering and continuing to render legal

141

services in connection with condemnation proceedings; (7) directly or indirectly soliciting or employing attorneys to act for property owners; (8) directly or indirectly dividing the fees paid by property owners for services in settling or contesting condemnation proceedings. The decree further ordered defendant to pay plaintiff master's fees in the sum of $873, and other taxable costs. From this decree defendant appeals.

Defendant insists he was not engaged in the practice of law or the solicitation of law business; that the acts complained of were legitimate and necessarily incident to the business which he was authorized by state license to pursue, namely that of engineer, appraiser and real estate broker.

We find the material facts, substantially undisputed, to be as follows: Defendant is a professional engineer, real estate appraiser and land surveyor who conducted his business under the name of Clausen and Company from an office at 228 North LaSalle street, Chicago, Illinois; that no lawyers have any space in his office and that he has no space in the office of any lawyer; that for a number of years defendant has circularized and solicited large numbers of property owners affected by condemnation proceedings in Cook county, Illinois, and has entered into contracts of employment within the last five years with approximately 5,000 property owners in connection with these condemnation proceedings; that defendant's *modus operandi* was as follows: A letter would be written to the property owners calling attention to the fact that "we, as engineers, specialize in representing owners on a contingent basis on property damage or condemnation suits"; then, following a recital of a number of similar matters in which defendant had represented property owners, the letter concluded with the suggestion that the recipient call for an appointment. A follow-up letter, again

calling attention to the service offered by defendant, concluded with the following paragraph: "Enclosed is the agreement which we regularly employ for this type of case. Inasmuch as an attorney's services are generally advisable, we shall be glad to work with any one of your choice; or if you desire, *we can have our own attorneys handle the legal aspects of this matter at no additional cost to you.*" (Italics ours.) A form of agreement enclosed was addressed to defendant and contained the following language:

"You are hereby authorized and requested to survey and make a complete structural report indicating present condition of the property commonly known as ———.

"We understand that all or part of this property will be taken or damaged by reason of the above project. The foregoing work on your part is to be done in preparation for negotiation of settlement of any claim for compensation for such damage to or taking of such property or any part thereof, or for use in connection with the trial of any suit regarding such compensation.

"You are authorized and directed on behalf of the undersigned to do whatever is necessary and proper in order to secure such compensation for the undersigned. You may on behalf of the undersigned, employ an attorney and real estate expert to represent the undersigned in such negotiations or litigation, and specify terms of employment; all subject to the approval of the undersigned.

"You are to receive reasonable compensation for your work, but payment shall be contingent upon recovery of an amount for the damage or taking of said property in excess of the amount offered us by the State of Illinois, or others, for such damage or taking. It is understood that all fees and expenses, including your compensation, attorney's fees, and real estate

expert's fees, shall be one third of said excess over said offer to us by the State of Illinois, or others."

Recently the words "payable only from the award" were added to the last sentence of the contract. Following the contract a questionnaire was sent to the property owner inquiring as to the assessed value, amount of taxes, amount of unpaid taxes, kind and size of building, size of the lot, and value of the property. A further follow-up letter advised the property owner that in accordance with "our agreement" defendant had retained attorneys to represent the client. The letter concluded by suggesting that the property owner have a few of his neighbors contact defendant for the purpose of retaining defendant to represent them.

During the course of the solicitation a letter was sent by defendant to the lawyer whom defendant had selected for the particular case. The pertinent parts of this letter were as follows:

"Dear Sir:

"We have been authorized and directed by ——— ——— of the property commonly known as ——— to employ you as Attorney to represent such owners in such negotiations or litigation as may be necessary to recover compensation for damage to or taking of said property or any part thereof by reason of the above project.

"We hereby employ you as such Attorney for said purposes and you are authorized and directed on behalf of such owners to do whatever is necessary and proper in order to recover such compensation, including the filing and prosecution of suit, the defense of any suit instituted in respect thereto, or making settlement, the amount of any settlement, however, to be subject to the approval of the owners.

"We are to survey and make a complete structural report indicating the present condition of said prop-

erty for such owners in preparation for said negotiations or litigation regarding such compensation, and we are to confer with and assist you in negotiations for settlement and in the presentation of evidence on the trial of the case. You are to receive payment from such owners for said work, contingent upon recovery of an amount in excess of the amount first offered by the State of Illinois, or the municipality concerned, for such damage or taking.

"It is understood and agreed that the fees and expenses which are to be paid by such owners shall not exceed one-third of said excess over said first offer to the owners, and that you shall be entitled to receive two-thirds of such amount as and for your Attorney's fees for your said services and the remainder shall be paid to us to compensate us for our services and for the services of real estate experts to be employed by us to represent such owners in assisting in connection with said negotiations or litigation. . . ."

Following this letter to the attorney, the latter made contact with the property owner, usually by letter advising the property owner that pursuant to the terms of the property owner's contract with Clausen and Company the attorney had been retained to represent the property owner in connection with the condemnation matter. The letter concluded by advising the property owner not to sign any papers without the attorney's consent.

Defendant testified that since 1946 he had solicited approximately 5,000 condemnation cases, and at the time of the hearing had 1,000 cases "just working"; that of these condemnation suits 50% had been instituted in court before he made contact with his client. He testified that from 1948 to May of 1951 he had employed Chicago lawyers and that six lawyers or law firms were sent more than 1,200 cases by him. All

these lawyers, by agreement made contemporaneously with their employment, advanced money to the defendant, and when the condemnation awards were paid to the lawyers, defendant had already been compensated in 80% of the cases. It further appeared that at the time of the hearing defendant was indebted to most of the lawyers.

It appears clear to us from a review of these documents and this undisputed proof that defendant was engaged in the solicitation of law business. He sought to become the representative of the defendant in condemnation suits then pending or shortly to be started by the State of Illinois or some municipal body. He was not a lawyer himself, and so he undertook to employ a handful of lawyers to whom he parceled out many hundreds of cases over a period of five years. The master and chancellor would have been guilty of culpable naivete had they not drawn the inference from such conduct that these lawyers were acting under defendant's control and direction and that in effect defendant was peddling legal services to property owners for a fee. In certain communications and in the oral testimony no attempt was made to conceal the fact that defendant, and not the owners, was employing the attorneys. In most instances, however, the subterfuge adopted was for the purpose of establishing a contract of employment voluntarily and independently made between the attorney and the property owner. Looking through this artifice, it is not difficult to ascertain that the property owner looked to defendant as principal in all the services that were to be performed, the most important of which were legal services, and that in consideration of so performing such services, either directly or by attorneys to be solicited by defendant, defendant was to be compensated on a contingent basis.

Defendant argues at considerable length that being a real estate broker and an engineer, as well as an appraiser, what he contracted to do was for services in accordance with these qualifications; that the property owner was given the right to hire his own attorney and that only when they specifically authorized him did defendant contact a lawyer; that he never prepared a pleading or appeared in court except to testify as an expert witness, never prepared or filed an appearance or answer or any type of legal document; that he appeared only at the attorney's request. All this is idle in view of the overriding fact that Clausen controlled the litigation by his control of the attorneys. He was capitalizing on legal services of others for his own profit. In *People ex rel. Chicago Bar Association v. Chicago Motor Club,* 362 Ill. 50, the court said at page 57:

"Legal services cannot be capitalized for the profit of laymen, corporate or otherwise, directly or indirectly, in this State. In practically every jurisdiction where the issue has been raised it has been held that the public welfare demands that legal services should not be commercialized, and that no corporation, association, or partnership of laymen can contract with its members to supply them with legal services, as if that service were a commodity which could be advertised, bought, sold and delivered."

In the instant case the commercial aspect of the transaction is emphasized by the precaution which defendant took to secure the payment of his own fees before payment of the awards, by accepting "loans" from the attorneys retained, thereby securing his agreed portion of the fee, or more, in advance.

In the case of *People ex rel. Chicago Bar Association v. Goodman,* 366 Ill. 346, the court found defendant guilty of the unauthorized practice of law, his activ-

ities consisting, among other things, of handling and adjusting workmen's compensation claims which he secured by advertising and took on a contingent fee basis. In that case the court said (p. 356):

"The faithful observance of the fiduciary and confidential relationship between attorney and client is one of the greatest traditions of the legal profession. In Goodman's business that relationship is absent as to the litigant whom the attorney employed by Goodman purportedly represents. The respondent is the attorney's real client and paymaster, and the one to whom the attorney owes allegiance."

In *Chicago Bar Association v. United Taxpayers of America,* 312 Ill. App. 243, the court affirmed an injunction restraining one Teeter and the United Taxpayers of America, a corporation purporting to be acting not for pecuniary profit. Teeter solicited and procured authority to represent persons in the preparation and prosecution of all claims for the credit and refund of Illinois Retailers Occupation taxes illegally collected. Teeter claimed that his activities were proper and were incidental to his profession of certified public accountant. In affirming the injunction the court found that Teeter was engaged in the unauthorized practice of law. In *Midland Credit Adjustment Co. v. Donnelley,* 219 Ill. App. 271, the court said (page 277):

"It is patent that the combination between complainants was for the very purpose of evading the law regarding its professional practice. The corporation could solicit collections, which is law business, which the lawyer was inhibited from doing by legal ethics, and the lawyer could institute legal proceedings and conduct them to a finality, which the corporation could not do."

 We think that under the facts in this case the matter comes directly within the prohibition of the

ruling announced above and that defendant here was attempting to contract with a solicited group to supply them with legal services and was in effect advertising legal services as a commodity which he would deliver for a stipulated fee. The fact that defendant may have performed these other services which he was entitled to perform does not alter the fact that he was also engaged in performing services of a nature that he had not the right to perform, and those are the services against which the prohibition in the decree is directed.

The principles that we have announced here have been frequently repeated by our courts. As prohibiting solicitation of legal services is the recent case of *Atchison, T. & S. F. Ry. Co. v. Andrews,* 338 Ill. App. 552. *McCloskey v. San Antonio Public Service Co.* (Tex. Civ. App.), 51 S.W.2d 1088.

Defendant cites the case of *Chicago Bar Association v. Kellogg,* 338 Ill. App. 618, in support of his argument that the mere fact that he had authority to employ an attorney for the property owner did not constitute the practice of law. The cited case is no authority for the proposition. The case does not purport to lay down an all inclusive definition of what constituted the practice of law. It merely held that the acts performed by the defendant in the case there under consideration were such as to constitute the illegal practice of law; it did not hold that the acts there indicated were the only acts constituting the practice of law.

Defendant cites several cases from other jurisdictions which we do not deem necessary to consider at any length. The law in this State as indicated by the above authorities seems to leave no doubt as to the policy of the State, and no single case in Illinois that we have read supports the contentions argued for defendant.

149

■■■■■■■

We have carefully examined the various paragraphs of the injunctive order and we believe that the decree is correct; accordingly it is affirmed.

*Decree affirmed.*

SCHWARTZ, P. J. and ROBSON, J., concur.